**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated<br>Plaintiff | ) ) ) ) | 11-cv-1379 |
| v. | ) ) | Judge Robert W. Gettleman |
| FIRST CREDIT SERVICES, INC. dba ACCOUNTS RECEIVABLE TECHNOLOGIES<br>Defendant. | ) ) ) ) ) | Magistrate Judge Morton Denlow |

<u>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**</u>

**Attorneys for Defendant,
FIRST CREDIT SERVICES, INC.**

David M. Schultz
James C. Vlahakis
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
jvlahakis@hinshawlaw.com

I.     **Introduction**

In this action, plaintiff, Vito A. Pesce, alleges that defendant, First Credit Services, Inc.

("FCS"), violated The Telephone Consumer Protection Act ("TCPA") by making an auto-dialed

call to his cell phone while FCS was attempting to collect a debt allegedly owed to for the lease

of automobile.[1]   The TCPA makes it unlawful "for any person … to make any call (other than a

call … made with the prior express consent of the called party) using any automatic telephone

dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a ...

cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. § 64.1200.   Pursuant to its

rule-making authority, the Federal Communications Commission ("FCC") has determined that

when a debtor gives his phone number to a creditor in connection with a debt, the debtor

consents to receive auto-dialed and prerecorded message calls regarding the debt at the number

provided.  FCC Declaratory Ruling No. 07-232, ¶ 9 (Exhibit 3).  Thus, a debt collector seeking

payment of a debt may, without violating the TCPA, call a debtor using automated dialing

technology on a cell phone number that the debtor gave to the creditor.  Here, it is undisputed

that FCS obtained the plaintiff's phone number from plaintiff's creditor and that FCS did not

skip trace or call capture plaintiff's number.  (Exhibit 4, Declaration of FCS's President, Frank

Russo, ¶¶ 25, 27; Exhibit, GMAC/Nuvell subpoenaed records).

Plaintiff has moved for certification of the following class:

(1) all persons within the State of Illinois (2) who, on or after January 1, 2010 and
on or before February 28, 2011 (3) received a non-emergency telephone call from
Defendant to a cellular telephone through the use of an automatic telephone
dialing system or an artificial or prerecorded voice and (4) *where defendant's*

---

[1]   FCS served a subpoena on GMAC who in turn provided loan documents which reflect that plaintiff leased a
vehicle from Saab Financial Corp. (Ex. 1-A; 1-B).  Subpoena records demonstrate that Plaintiff provided his home
phone number on the credit application (Ex. 1-C).   Nuvell's subpoena records demonstrate that Nuvell listed
plaintiff's cellular number as his home number (Ex. 1-D).  Through counsel, plaintiff disputed the amount owed on
the lease to GMAC and Nuvell Credit.  (Ex. 1-E; Ex. 1-F).  Records produced via the subpoena reflect that someone
at Plaintiff's creditor on 2/29/08.  (Ex 1-G).  Another entry on 7/24/2006 reflect that someone contacted the creditor
to inquire about the status of a payment and that this person provided a call back number that is one digit different
from Plaintiff's cell phone (the last number of Plaintiff's cell is a 5) (Ex. 1-h).

*records* do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call). (Dkt. No. 27, p. 1 (emphasis supplied)).

Plaintiff originally sought to represent a nationwide class that included people who were called by defendant in the past four years. The original definition included:

(a) all persons within the United States who, (b) on or after February 28, 2007 (c) received a non-emergency telephone call from Defendant to a cellular telephone (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice and (e) who did not provide prior express consent for such calls during the transaction that resulted in the debt owed. (Dkt. No. 21, p. 1).

Plaintiff amended the original definition, in part, because he recognized that it did not meet Federal Rule 23's requirements. The new definition, however, is also defective.

## II.     Summary of Argument in Opposition to Class Certification

Plaintiff's motion should be denied because the class definition fails to meet the requirements of Fed. R. Civ. P. 23. First, plaintiff's claim is not typical of the claims of the alleged class members. Defendant obtained plaintiff's phone number from GMAC, and GMAC's possession of the number is evidence that plaintiff consented to receive auto-dialed collection calls from FCS. The class definition, however, includes people who were contacted at numbers that FCS obtained from sources other than the creditor, such as skip-tracers or credit reporting agencies. Typicality is absent because the named plaintiff's claim is subject to a consent defense that may not apply to class members who were contacted at numbers obtained from sources other than the creditor. Second, plaintiff is not an adequate class representative for the same reason that the typicality requirement is not satisfied; the creditor's possession of plaintiff's number gives rise to a consent defense that may not apply to other class members.

Third, questions affecting individual class members predominate over questions common to the class members. The individual issues include: (a) given the portability of phone numbers, whether a number called by defendant was assigned to a cell phone or a landline at the time FCS

called the number; (b) whether potential class members gave consent for FCS to call them by providing their phone numbers to either FCS or their creditors; (c) whether potential class members revoked their consent; (d) the identify of the person who received the call. Additionally, nearly all the cases that plaintiff cites to support his motion involve junk fax blast cases. Dkt. 27, p. 8. In the cited cases, the respective plaintiffs alleged that a defendant violated Section 227(b)(1)(C) of the TCPA by sending unsolicited facsimile advertisements to recipients who had no *established business relationship with the defendants*. In contrast to junk fax cases, which generally meet the predominance standard by virtue of the fact that defendants in those cases have typically purchased a list to *potential customers* from a third party vendor, and engaged in no more than a handful of "fax blasts," here, numerous individualized issues predominate.

Fourth, the class definition is fatally overbroad. If a person gives his cell phone number to a creditor in connection with a debt, automated calls made to that number by the debt collector would comply with the TCPA. The class definition, however, fails to exclude people who consented to receive calls from defendant by releasing their phone numbers to the creditors or to defendant. Fifth, a class action is not a superior method for resolving this case because the damages provided by the TCPA - $500 to $1,500 per offending call - are sufficient for class members to bring their own *individual* claims. Fifth, plaintiff lacks standing to represent persons who were subject to skip tracing and call capture because there is no evidence to suggest that his number was not obtained through these means.

## III.    Requirements under Federal Rule 23

A class may "be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). A class can be certified only if the Court, after performing a "rigorous analysis," finds

130164340v4  0922494  07791

that the class satisfies Rule 23(a)'s four prerequisites: numerosity, commonality, typicality and adequacy. *Id*. If the prerequisites are satisfied, a plaintiff must also establish that a class may be properly maintained under one of the three subsections contained in Rule 23(b). Here, plaintiff seeks to certify the class under Rule 23(b)(3), which requires him to show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The failure to meet ***any*** one of the Rule 23 elements precludes certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

## IV.  Argument

### A.  Plaintiff's Claim Is Not Typical of the Claims of the Alleged Class Members

The class representative's claim meets the typicality requirement of Rule 23(a) if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the representative's] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006). The typicality requirement ensures that the class representative's claims "have the same essential characteristics as the claims of the class at large." *Id. See also, Landsman & Funk, P.C. v. Lorman Business Center, Inc*., 2009 WL 602019, *7 (W.D. Wis. 2009). Even "an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class [and] bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd.,* 637 F. 3d at 726.

Plaintiff seeks to represent a class of Illinois residents who had a cell phone number that FCS called, where *FCS's records* do not establish that the class member consented to be called by defendant. The definition includes people who were contacted at numbers "obtained through skip tracing or captured by the defendant's equipment from an inbound call." Dkt. 27, p. 1.

130164340v4  0922494  07791

FCS obtained the number it called plaintiff at from the creditor, GMAC/Nuvell. (Ex. 4, Dec. of Frank Russo, ¶¶ 22-23). FCS did not obtain plaintiff's number from a skip tracer or by capturing his number on caller ID when plaintiff called FCS (*Id*. at ¶ 27). The records the creditor produced in response to a subpoena indicate that plaintiff's creditor did not obtain his number through skip-tracing or call capture (Group Ex. 2, creditor records; Russo Dec., at ¶ 27). Plaintiff's records suggest that he did not call the creditor using his cell phone, which means that the creditor could not have obtained the number via call capture. (Ex. 5, AT&T email).

Plaintiff's claim is subject to the defense that he consented to defendant's calls by releasing his number to the creditor. The fact that the creditor possessed plaintiff's phone number is evidence that plaintiff released the number to GMAC/Nuvell and thereby consented to receive auto-dialed collection calls from FCS. *Cunningham v. Credit Mgmt. L.P.,* 2010 WL 3791104 (N.D. Tex. 2010) (treating creditor's possession of debtor's cell phone number as evidence that debtor consented to receive debt collector's auto-dialed calls).

The class, however, is *not* limited to people who were contacted at phone numbers that the creditors supplied to FCS. The class instead includes debtors who were contacted on cell phone numbers that ICS obtained from skip tracers, from credit reporting agencies, or through call capture. Class members whose cell phone numbers were provided to FCS by a skip trace company would have viable TCPA claims as long they had not consented to receive FCS's calls (by for example giving the number to the creditor). Because plaintiff is subject to a consent defense that may not apply to class members whose numbers were obtained from sources other than creditors, typicality is lacking.

In *Mitchem v. Illinois Collection Serv., Inc.,* 2010 WL 3003990, *4 (N.D. Ill. July 29, 2010), the court found that the claim of the named plaintiff in a TCPA action against a debt collector was not typical of the claims of the class members because the defendant obtained the

130164340v4 0922494 07791

plaintiff's number from his creditor, but the class included people who had been called at numbers that the defendant obtained from sources other than the creditor. In *Landsman & Funk*, 2009 WL 602019 at *8, the named plaintiff alleged that the defendant violated the TCPA by sending unsolicited facsimile advertisements. The representative's claim was not typical of those of the class members because the representative had an established business relationship with the defendant, and the representative's claim was thus subject to a defense that did not apply to the class members who *did not have an established business relationship* with the defendant. In *Oshana*, the named plaintiff alleged that Coca-Cola violated the Illinois Consumer Fraud Act by representing that fountain Diet Coke and bottled Diet Coke contained the same ingredients, when fountain Diet Coke contained saccharin. The court found that the named plaintiff's claim was not typical of the claims of the class members because *the plaintiff did not know that the fountain drink contained saccharin*. 472 F.3d at 514. The class, in contrast, included people who bought fountain Diet Coke *knowing it contained saccharin*.

As in the above cases demonstrate, the proposed class here does not meet the typicality requirement, and the motion to certify the class should be denied.

### B. Plaintiff Is Not an Adequate Class Representative

A class may not be certified unless the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When the claims of the class representative are "significantly weaker than those of some (perhaps many) other class members," the named plaintiff is not an adequate class representative under Federal Rule 23(a)(4). *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (named plaintiffs were not adequate representatives because their claims were weaker than claims of some class members). The named plaintiff does not satisfy the adequacy requirement if he is "subject to a defense" and "other class members may not be subject to the same defense, or perhaps to any

6

defense." *CE Design Ltd.,* 637 F. 3d at 724. FCS need only establish "an arguable defense" to the named plaintiff's claim to defeat adequacy under Rule 23(a)(4). *Wooley v. Jackson Hewitt, Inc.*, 2011 WL 1559330, *9 (N.D. Ill. Apr. 25, 2011).

Here, the plaintiff is not an adequate class representative because his claim is weaker than the claims of some class members. FCS obtained plaintiff's cell phone number from plaintiff's creditor, GMAC/Nuvell, and GMAC/Nuvell did not obtain plaintiff's number from a third party, it did not skip trace his number, and it did not capture his number on caller ID. (Ex. 4, Declaration of Frank Russo, ¶¶ 25, 27). Because GMAC/Nuvell possessed plaintiff's number, and did not obtain the number from a third party, plaintiff must have released his number to GMAC/Nuvell. And by doing so, he consented to receive auto-dialed collection calls from FCS regarding his debt to GMAC/Nuvell. *See, e.g., Mitchem,* 2010 WL 3003990, at *4 (TCPA claim arising from calls collector made to number it obtained from the creditor was weaker than TCPA claim arising from calls collector made to numbers it obtained from third parties); *see also Cunningham,* 2010 WL 3791104, at *5 (creditor's possession of cell phone number, among other evidence, established that plaintiff had consented to received auto-dialed collection calls). At a minimum, the evidence here supports the inference that plaintiff released his number to GMAC/Nuvell, and FCS therefore has a meritorious defense to plaintiff's claim.

In contrast to the plaintiff, some class members under the class definition received auto-dialed calls on numbers that FCS "obtained through skip tracing or captured by the defendant's equipment from an inbound call." Dkt. 27, p. 1. Such class members are not subject to the consent defense that FCS will use to defend plaintiff's individual TCPA claim. *Mitchem,* 2010 WL 3003990, at *4; FCC Declaratory Ruling No. 07-232, ¶ 9 (Exhibit 3). Because plaintiff here is "subject to a defense" and "other class members may not be subject to the same defense," the named plaintiff is not an adequate class representative and the Court should deny the motion for

130164340v4  0922494  07791

class certification. *Randall,* 637 F.3d at 823-24 (affirming denial of class certification in sex discrimination case because named plaintiffs' claims were weaker than class members'); *CE Design Ltd.,* 637 F. 3d at 724-725 (reversing district court's certification of class in unsolicited fax case under TCPA because named plaintiff was subject to consent defense that might not apply to some class members); *Wooley*, 2011 WL 1559330, at *9 (named plaintiff was inadequate due to clean-hands defense that might not apply to other class members).

### C.    Questions Affecting Only Individual Class Members Predominate Over Questions That Are Common to Class Members

Federal Rule 23(b)(3) requires that common issues of fact or law predominate over questions affecting only individual class members.  Common issues are predominant only if "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Foreman v. PRA III, LLC,* 2007 WL 704478 (N.D. Ill. 2007); *Gene and Gene, LLC v. Biopay LLC,* 541 F.3d 318, 328 (5th Cir. 2008).  The predominance inquiry looks to "how a trial on the merits would be conducted if a class were certified."  *Biopay LLC,* 541 F.3d at 328. The predominance criterion is far more demanding than the identification of a single common issue, and the "movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment when other individualized issues will dominate or be meaningfully material to the resolution of the absent class members' claims."  *Hamilton v. O'Connor Chevrolet, Inc.,* 2006 WL 1697171, at *6 (N.D. Ill. 2006).

As discussed below, a class member has a valid TCPA claim against FCS only if all of the following propositions are true:  **(a)** a number called by defendant was assigned to a cell phone (and not a landline) *at the time FCS called the number*; and **(b)** the class member had *not* consented to receive the call by releasing the number to the creditor or FCS.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  Proposition **(b)** raises the additional issue of **(c)**, whether a class member

130164340v4  0922494  07791

revoked consent after initially giving consent to be contacted at a number. Another individual question that must be resolved for all class members is **(d)** the identify of the person who received the call that FCS made to the number.

By way of background, when FCS seeks to collect a debt for a creditor, it may call the debtor at the number provided by the creditor, and it may call the debtor at other numbers it has obtained (from the debtor himself or from a third party such as a skip tracer). (Ex. 4, Declaration of Frank Russo, ¶¶ 6, 17-18) FCS may also call phone numbers that were once associated with the debtor – ie., a "wrong number" call. When it calls someone other than the debtor, it does not necessarily have a record of the identity of the person who received the call. (*Id*. at ¶¶ 9, 16). All of the numbers FCS calls are recorded in FCS's collection database and associated with the account of the debtor FCS was trying to collect from, even when the call was made to someone other than a debtor. (*Id.*). FCS's collection database does not show the source from which it obtained every number it calls or whether every such number is assigned to a cell phone or landline. (*Id*. at ¶ 8).

To identify potential class members in this action, FCS utilized software to "scrub" all the Illinois area-code numbers it called during the relevant time period and identify the numbers that are *currently* assigned to cell phones. (*Id*. at ¶ 10). Because the scrubbing software works off of a database of numbers that are currently identified as cellular phone numbers, the scrub does not show whether a number that is currently identified as assigned to a cellular phone was assigned to a cellular phone *at the time the calls were placed* to the particular phone number. (*Id*. at ¶ 11).

> 1.    **Whether a Number Called by Defendant Was Assigned to a Cell Phone or a Landline at the Time FCS Called the Number Is an Individual Question**

A number that is assigned to a landline can be "ported" to a cell phone and vice versa.

9

130164340v4  0922494  07791

(*Id*. at ¶ 12).[2] The scrub performed by FCS does not show whether the numbers identified as cell phones were assigned to cell phones at the time FCS called the numbers. FCS is not aware of any scrubbing software which can go back to the time that the calls were placed to identify whether the call was placed to a ported cellular phone. (*Id*). In summary, there is no generalized evidence that will resolve for all class members, as of the time FCS made the automated calls, whether numbers identified as cell phones in the scrub were in fact assigned to a cell phone at the time FCS made the calls.

### 2. Whether Putative Class Members Consented to Receive FCS's Calls Is An Individual Question

If class members consented to defendant's calls by giving their numbers to the creditor or defendant, the calls did not violate the TCPA. Whether the class members consented in this manner is an individual question that predominates over questions common to the class members. In *Hicks v. Client Services, Inc.,* 2008 WL 5479111, *7-*8 (S.D. Fla. 2008), the court refused to certify a TCPA class consisting of debtors who received calls from a debt collector on their cell phones because evidence concerning whether each class member consented to receive the calls (by releasing his or her phone number to the creditor) would be different for every class member. Deciding the class's claim would necessitate "mini-trials on consent of every class member." *Id.* The court in *Versteeg v. Bennett, Deloney & Noyes, P.C.,* 2011 WL 159805, at *3 (D. Wy. Jan. 13, 2011), refused to certify a TCPA class against a debt collector for the same reason. *See also Biopay LLC*, 541 F.3d at 328 (reversing certification of an unsolicited fax case because of predominant individual issues concerning whether class members consented to

---

[2] *See* Federal Communications Commission, Wireless Local Number Portability (Wireless LNP) Frequently Asked Questions, available at http://www.fcc.gov/cgb/Number Portability accessed February 4, 2011; (FCC Release). A wireless consumer also has the ability to change service providers within the same local area and still keep the phone number. (FCC Release). *See* 47 U.S.C. § 251(b)(2) (requiring local exchange carries to provide local number portability to the extent feasible in accordance with FCC requirements).

130164340v4  0922494  07791

receive the faxes); *Levitt v. Fax.com,* 2007 WL 3169078, *4-*5 (D. Md. 2007) (same); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1163 (S.D. Ind. 1997) (same).

The class claims cannot be decided without resolving numerous *individual* questions that will depend on different evidence for every class member. Individual issues exist in terms of how FCS and its numerous creditors obtained the cellular telephone numbers in question. FCS produced records showing that FCS received permission to call some debtors who are potential class members. FCS has underlying credit applications and contracts, all of which evidence consent. (Ex. 4, Dec. of Russo, attachments B and C). FCS is also reviewing credit applications and contracts, comparing all of the phone numbers provided to those in its own records, and compiling a list of individuals who provided their cell number to the original creditor. Previously, plaintiff demanded, and was provided nationwide documentation on consent. Now that the class has been limited to Illinois, FCS is reviewing and producing contracts executed for Illinois based consumers who may have consented to being called on their cell phones on a rolling basis. This process has been difficult, involving an individualized review of each of the applications to determine whether a number was provided, and in the instances where it was, comparing that number to all numbers called with respect to a member's account history. Where FCS may have obtained the cell phone number during the course of collection work (voluntarily from a debtor or via after acquired consent), FCS estimates that it would take between 5 to 30 minutes to review collection notes for each file to determine in which manner FCS obtained a particular cellular number. The estimate is based on the number of contacts between the debtor and FCS which are reflected in the account notes. If a debtor has disputed a debt, it may take

longer to review FCS's records based upon the increase in contacts that need to be reviewed. (Ex. 4,¶¶ 8-21).[3]

Here, for every potential class member who received an automated call on a cell phone, the Court would have to review the records of FCS, the records of the creditor, and the records of the class member to determine whether the class member consented to the call by releasing his or her number to either FCS or the creditor.  As noted above, FCS cannot run a database search that will identify those debtors who were contacted on cell phone numbers that were supplied by someone other than the creditor or the debtor himself, such as skip trace company.  (Ex. 4, ¶ 8)**.** As in *Hicks* and *Versteeg,* the determination regarding consent will vary from class member to class member and turn on different evidence for every class member; the issue of consent therefore precludes certification under Rule 23(b)(3).

### 3.  Whether a Putative Class Member Revoked Consent

A related question affecting only individual class members is whether any class member who initially consented to be contacted by the defendant later revoked consent.  For example, in *Sengenberger v. Credit Control Services, Inc.,* 2010 U.S. Dist. LEXIS 43874, *9-10 (N.D. Ill. 2010), the debtor consented to receive auto-dialed calls from the debt collector by releasing his number to the creditor.  The court found, however, that the collector ran afoul of the TCPA by continuing to make auto-dialed calls to the debtor's cell phone after the debtor sent the collector a letter instructing the collector to cease calling him, which operated to revoke his consent.

---

[3]  Additionally, FCS has produced records which demonstrate that potential class members transmitted their cellular telephone number to both creditors and FCS when the debtor disputed the underlying debt.  (Ex. 4, ¶ 4-6).  If a call was made to a number that was provided to the creditor or Defendant, the call would comply with the TCPA as reflected by the FCC.  Lastly, FCS has and will continue to be require to review and produce its only collection notes to see if a debtor provided a cellular number as a contact number when the debtor called or spoke with FCS in relation to a collection letter or a phone call.  (Ex. 4, ¶¶ 17-18)  While arguably consent may not exist for the original call, all future calls would have been made with express consent.

130164340v4  0922494  07791

There is no generalized evidence that resolves for all class members whether they consented to receive calls from FCS on their cell phones or whether they revoked consent. Because the question of consent is not subject to classwide proof, the class does not satisfy Rule 23(b)(3)'s predominance requirement.[4]  *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 746-47 (7th Cir. 2008); *Pastor v. State Farm Mutual Automobile Ins. Co.,* 487 F.3d 1042, 1045 (7th Cir. 2007).

### 4.    Who Actually Received the Call Is an Individual Question

When trying to collect a debt, FCS may calls people other than the debtor.  FCS may call wrong numbers.  In these cases, although the debtor/class member was not called, the phone number will still be associated in FCS's records with the account of the debtor/class member. FCS did a cell phone scrub to identify potential class members.  All the numbers that ICS called during the relevant period were scrubbed, the numbers identified as assigned to cell phones at the time of the scrub were placed in a list, and the debtors associated with those scrubbed numbers are the potential class members.  (Ex. 4, Declaration of Frank Russo, ¶¶ 6, 11-12, 17-18).

The potential class members on this list, however, did not necessarily receive the calls that caused them to be included on the list, because as stated the calls may have been made to a wrong number.  Consequently, whether the potential class member (who is associated with a number that was identified as a cell phone in the scrub) was the person who actually received FCS's call is a question that affects individual class members and that cannot be resolved on a classwide basis.  If the call was made to a third party, and not the debtor, then the debtor has no TCPA claim.

---

[4]  This case is distinguishable from the Court's decision to certify a class in a recent unsolicited fax case, *Holtzman vs. Turza*, 08-cv-2014, Mem. Op. and Order dated 8/29/11, p. 6. There, it was conceded that no class members consented to receive the facsimile advertisements.  Further, this Court found that, "Defendant has testified that he did not obtain consent to send any of the faxes as issue ."

130164340v4  0922494  07791

### 5.    Plaintiff's Authorities Are Inapt

Nearly all the cases that plaintiff cites to support his motion involve junk fax blast cases. Dkt. 27, p. 8.  In the cited cases, the respective plaintiffs alleged that a defendant violated Section 227(b)(1)(C) of the TCPA by sending unsolicited facsimile advertisements to recipients who had no *established business relationship with the defendants*.  In fact, in a majority of the cases, the defendants purchased targeted lists to potential clients to facilitate the transmission of "blast faxes." *See Hinman v. M & M Rental Ctr.,* 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008) (defendant hired fax broadcaster to send unsolicited fax advertisements to companies whose fax numbers appeared on list of marketing leads); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 2010 WL 744262 (N.D. Ill. 2010) (defendant sent unsolicited faxes to companies on marketing list it purchased from third party); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.,* 2010 WL 198308  (N.D. Ill. 2010) (defendant paid fax broadcaster to send unsolicited fax advertisements); *Holtzman v. Turza*, 2009 WL 3334909 (N.D. Ill. 2009) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) (same); *Green v. Serv. Master on Location Servs. Corp.*, 2009 WL 1810769 (N.D. Ill. 2009) (defendant sent blast faxes to marketing list defendant purchased from third party).

Recipients of the blast fax advertisements in the above cases made up viable classes under Rule 23 because the list of the recipients, purchased by a defendant and kept by the defendant or the fax broadcaster, provided "generalized evidence" that proves all the elements of a claim under § 227(b)(1)(C).  The lists in question showed the transmission of the advertisement to the class member, the absence of a business relationship (most often because the defendant obtained the recipients' numbers from a third party), and the absence of consent (in light of the absence of a prior business relationship).  Additionally, in almost everyone of these cases, the blast faxing took place over a relatively short time period, and in some instance, in the course of

130164340v4  0922494  07791

a single day. Accordingly, the level of generalized proof was relatively simple to find in those cases: (a) the purchase of a list of recipients; (b) the transmission of the subject faxes = a lack of an established relationship, and a violation of the facsimile provisions of the TCPA.

In contrast, in cases where plaintiff allege that they received alleged auto-dialed calls that were made by a debt collectors in alleged violation of Section 227(b)(1)(A)(iii) of the TCPA, there is no generalized evidence that shows whether people consented to receive the calls by giving their numbers to the creditor or the debt collector. Since calls are not based upon purchased tele-marketing lists, debt collectors like FCS cannot run a database search that identifies all debtors who were contacted on numbers provided by the debtor, numbers provided by the creditor, or numbers provided by a third party. Instead, for each potential class member, a court would have to determine whether the class member gave his number to the debt collector or the creditor (in addition to determining whether the number was assigned to a cell phone at the time of the call and who the subscriber was). These determinations would require a court to review, for each class member, the debt collector's collection notes, the creditor's records, and the records of any associated phone company to determine who actually subscribed or owned the phone at the time the calls were placed. As the *Hicks* court recognized, these individual determination amount to mini-trials on the question of consent. *Hicks,* 2008 WL 5479111 at *8. *See also, CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F. 3d 721, 724-725 (7th Cir. 2011) (reversing district court's certification of class in junk fax case because the named plaintiff was subject to consent defense that might not apply to some class members).

The only cases within this District that have certified TCPA cell phone cases (*Balbarin v. North Star Capital* and *Mitchem v. Illinois collection Services* (cited by Plaintiff's Memo. at p. 8)) are distinguishable. The *Mitchem* class was limited to debtors who (like the named plaintiff there) were called on phone numbers that the creditors had given to the debt collector. The

*Mitchem* plaintiff had proposed three class definitions before he fashioned a class definition that the court found to meet Rule 23's requirements. The certification order in *Balbarin*, 10-cv-01846, was premised on the assumption that consent under the TCPA was controlled exclusively by the records in the collector's possession, which is not the case under the FCC's declaratory order. These cases afford no support for the motion for class certification here.

In summary, the motion for class certification should be denied because there is no generalized evidence that resolves, for all class members on a classwide basis, the following issues: (a) whether a number called by defendant was assigned to a cell phone or a landline at the time FCS called the number; (b) whether potential class members gave consent for FCS to call them by providing their phone numbers to either FCS or their creditors; (c) whether potential class members revoked their consent; (d) the identify the person who allegedly received the call. The class therefore fails to meet the predominance requirement of Rule 23(b)(3).

**D.     The Class Definition is Overbroad Because it Includes Members Who Do Not Have TCPA Claims**

When a class definition includes people who do not have standing to maintain the cause of action in their own right, the court should refuse to certify the class. *Oshana v. Coca-Cola Co.,* 225 F.R.D. 575, 580 (N.D. Ill. 2005), *aff'd* 472 F.3d 506 (7th Cir. 2006); *In re Sears, Roebuck & Co.,* 2007 WL 4287511, *4-*5 (N.D. Ill. 2007). Certification is inappropriate unless it is "clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief." *Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir. 1980). If a definition "sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." *Kohen v. Pacific Investment Mgmt. Co.,* 571 F.3d 672, 678 (7th Cir. 2009). "[A] district court must make whatever factual and legal inquiries are necessary to ensure that requirements for certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *American Honda Motor*

130164340v4 0922494 07791

*Co., Inc. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir. 2001)). In evaluating a motion to certify a class, the court does not accept the complaint's allegations as conclusive. *Szabo,* 249 F.3d at 675; *West v. Prudential Securities, Inc.,* 282 F.3d 935, 938 (7th Cir. 2002) ("A district judge may not duck hard questions by observing that each side has some support . . . . Tough questions must be faced and squarely decided, if necessary by holding evidentiary hearings.")

Whether the class definition is overbroad overlaps the merits of the claim. The Court must look to the elements of a claim under § 227(b)(1)(A)(iii) to resolve whether the class includes people who lack standing to bring such claims. Thus, the Court "must make a preliminary inquiry into the merits" to resolve class certification. *West,* 282 F.3d at 938; *Szabo,* 249 F.3d at 676. This preliminary inquiry shows that the class cannot be certified.

Under the FCC's regulations, if a person gives his or her cell phone number to a creditor in connection with a debt, he or she consents to receive auto-dialed calls on the cell phone from a debt collector seeking payment of the debt. FCC Declaratory Ruling No. 07-232, ¶ 9 (Exhibit 3). Thus, people who released to their creditors the numbers that FCS called consented to receive those calls, and they therefore have no TCPA claim. The class definition, however, does not exclude people who consented to receive auto-dialed calls by releasing their numbers to their creditors. Instead, the class covers any person called on a cell phone "where *defendant's records* do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call)." Dkt. 27, p. 1 (emphasis supplied).

The class definition must take account of the evidence in the possession of the class members' creditors to avoid including people who do not have TCPA claims. Because the class

130164340v4  0922494  07791

definition does not account for this evidence, it is overbroad, and the motion for class certification should be denied, as the case law recognizes.

In *West,* the Seventh Circuit held that the class should not have been certified based on an inquiry into the merits: because the broker's misrepresentations were made orally and not publicized, the misrepresentations could not have affected the market price paid by purchasers of the stock, and thus the class members could not have relied on or been damaged by the oral misrepresentations. *West,* 282 F.3d at 938 ("Causation is the shortcoming in this class certification."). In *Oshana,* 472 F.3d at 514, and *In re Sears, Roebuck & Co.,* 2007 WL 4287511, *4-*5, the courts denied motions for class certification under the Illinois Consumer Fraud Act ("CFA"), 815 ILCS § 505/10a, because the proposed classes included people who did not have claims under the ICFA because they had not been misled by the defendants' conduct. In *Oshana*, (discussed above), the Seventh Circuit held that the class was fatally overbroad because it included people who bought fountain Diet Coke knowing it contained saccharin, and people who bought it without such knowledge. 472 F.3d at 514. *In re Sears, Roebuck & Co.*, the named plaintiffs alleged that Sears violated the CFA by publishing advertisements that falsely stated that its Craftsman tools were made in the United States. 2007 WL 4287511, at *1. The court denied class certification because the class included people who had not seen the misleading advertisements, and people who bought the tools despite *knowing that they were not made in the United States*. 2007 WL 4287511, at *5.

In these cases, the classes were overbroad because the certain purported class members suffered no damage as a result of the defendants' alleged deceptive practices. Here, the proposed TCPA class is overbroad because some class members consented to receive FCS's calls by releasing their numbers to the creditors, and they therefore lack TCPA claims. The Court should therefore deny the motion for class certification.

130164340v4  0922494  07791

E.    **A Class Action Is Not Superior Because Class Members Have Financial Incentive to Bring Individual Claims.**

Class actions are appropriate primarily when class members' individual damage claims are to not large enough to give them incentive to sue the defendant. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). But when class members have incentive to bring individual actions, the class action device is unnecessary for adjudicating the controversy. *Christie Clinic, P.C. v. Multiplan, Inc.*, 2009 U.S. Dist. LEXIS 5750 at *38 (C.D. Ill. 2009) ("[I]n a case like this one involving substantial individual claims, it is unnecessary to certify a class because individual class members have an important interest in bringing individual actions.") Where class members have substantial damages and inventive to bring individual actions, a class action is not superior under FRCP 23(b)(3). "Where the potential recovery is large, the size of the claim overcomes a potential plaintiff's disincentive to invest in an individual action to vindicate his rights." *Wyman v. Connecticut General Life Ins. Co.*, 1990 U.S. Dist. LEXIS 18762 at *44 (N.D. Ill. 1990).[5]

The *Wyman* court reasoned that Rule 23 "was not designed to permit large claimants, who are fully capable of proceeding on their own, to strengthen their bargaining position by threatening their adversaries with the prospect of class-wide relief and large attorney fee awards.' *Id.* at *45. Here, "the most compelling rationale for finding superiority in a class action," the existence of a "negative value suit," is not present. *Castano*, 84 F.3d at 748.

In *Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.*, 421 N.J.Super. 268, 23 A.3d 469 (2011) (Exhibit 6), the plaintiff received an unsolicited advertising facsimile from the defendant and sued the defendant on behalf of a class for allegedly violating the TCPA's prohibition against unsolicited fax advertising. The court concluded that "a class action is not a

---

[5]    *See also Szabo, Inc.*, 249 F.3d at, 678 ("it is unnecessary to certify a nationwide class. Each [class member] has a substantial claim, of the sort that could be, and often is, pursued independently"); *Cima v. Wellport Health Networks, Inc.*, 250 F.R.D. 374, 384 (S.D. Ill. 2008) ("the Court is not persuaded that a class action is a superior means of resolving the claims of the proposed class"); *Castano v American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("the most compelling rationale for finding superiority in a class action—the existence of a negative value suit—is missing in this case").

130164340v4  0922494  07791

superior means of adjudicating a TCPA suit."  Because every recipient of an unsolicited fax could recovery a minimum of $500 in statutory damages per fax, the class members had significant incentive to file individual actions. 23 A.3d at 476.

Here, any class member who actually received an auto-dialed call from defendant on his or her cell phone can recover $500 to $1,500 per call that was made without their consent.  Such recoveries give the class members incentive to pursue individual actions against FCS, especially where putative class members were called multiple times, and therefore a class action is not superior method for adjudicating this case. *See Local Baking Products, Inc.*, 23 A.3d at 476.

**F.**     **Plaintiff Lacks Standing to Represent Class Members Who May Have Been Skip Traced or Call Captured .**

Alternatively, plaintiff is not an adequate class representative because he lacks standing to assert a claim for any persons who may have been skip-traced or call captured by FCS or a creditor.  It is axiomatic that a plaintiff seeking class certification must establish standing to bring the suit by showing that he or she is a member of the proposed class.  *Keele v. Wexler,* 149 F.3d 589, 592-93 (7th Cir. 1998).  A plaintiff must possess the same interest(s) <u>and</u> suffer the particular injury shared by all members of the class.  *Id*.  *See also, McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("plaintiffs lack standing to seek - and the district court therefore lacks authority to grant - relief that benefits third parties.").  Plaintiff is an inadequate class representative and he lacks standing to represent a skip-trace or call-capture class.

**V.**     **Conclusion**

For the reasons stated, Defendant respectfully submits that this Honorable Court should deny Plaintiff's Motion for Class Certification.

130164340v4  0922494  07791

Date:  September 8, 2011

Respectfully submitted,

/s/*James C. Vlahakis*
David M. Schultz
James C. Vlahakis
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
Attorneys for Defendant

130164340v4  0922494  07791

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2011, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

> By: s/James C. Vlahakis
> James C. Vlahakis
> Attorney for Defendant
> HINSHAW & CULBERTSON LLP
> 222 North LaSalle, Suite 300
> Chicago, IL 60601-1081
> tel: 312-704-3000
> fax: 312-704-3001
> jvlahakis@hinshawlaw.com

130164340v4  0922494  07791