**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated )<br>Plaintiff )<br>)<br>v. )<br>)<br>FIRST CREDIT SERVICES, INC. dba )<br>ACCOUNTS RECEIVABLE )<br>TECHNOLOGIES )<br>Defendant. ) | 11-cv-1379<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Morton Denlow |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO RECONSIDER ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FRCP 54(B)**

Defendant, FIRST CREDIT SERVICES, INC. ("FCS"), submits the following Memorandum in Support of its Motion to Reconsider the Court's Order granting Plaintiff's Motion For Class Certification:

**I.  Introduction**

Plaintiff filed suit for violations of the Telephone Consumer Protection Act ("TCPA"), claiming that he never consented to have FCS (a debt collector) or his underlying creditor call his cell phone via an automated dialer.  The Court granted Plaintiff's Class Certification Motion based on the Court's factual finding that Plaintiff's cell phone number was *not* found in the records of FCS or the underlying creditor.  Dkt. 71, p. 2 ("Plaintiff's telephone number is not found in either defendant's or GMAC's records.")  That finding, however, was incorrect.  Plaintiff's cell phone number was in the records of the creditor, and it was the creditor that provided FCS with the number.

The Court should reconsider its ruling because the creditor's possession of Plaintiff's cell phone number gives rise to a defense that applies to the Plaintiff's claims but not the claims of all

class members under the class definition that the Court certified. Plaintiff's number does appear in the records of his creditor, but the class definition contains individuals whose numbers were not in the records of their creditors. Plaintiff's TCPA claim is therefore weaker than the claims of the class members. And when the claim of the named plaintiff is weaker than the claims of the class members, Federal Rule 23's requirements of adequacy and typicality are not met. Class certification was therefore inappropriate.

In addition, the Court's class definition includes people who were contacted on their cell phone "where *defendant's* records do not show that the person provided the number to the defendant or the original creditor." Dkt. 71, p. 3 (emphasis added). This definition is overbroad. A consumer who releases his number to the creditor consents to FCS's calls under the FCC's regulations, but such a consumer will still fall within the class definition whenever his provision of the number to the creditor is not shown in FCS's records. This would occur when the consumer's provision of the number is shown in the creditor's records but not FCS's records. By looking at the evidence contained only within FCS's records, the definition sweeps within the class people who gave their numbers to the creditors and who do not have TCPA claims under the FCC's definition of consent. The class definition should account for evidence in the possession of the creditors, but it does not. The overbreadth of the class definition warrants reconsideration of the order. Last, the order should be reconsidered because whether each class member consented to receive FCS's calls is an individual issue that predominates over common questions under Rule 23(b)(3).

## II. Standard of Review

Federal Rule of Civil Procedure 54 provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities." Fed. R. Civ. P. 54(b). "[A] motion to reconsider an interlocutory order may be entertained and granted as justice requires." *Marconi Wireless Tel. Co. v. United States,* 320 U.S. 1, 47-48 (1943). *See also, Moses H. Cone Mem. Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge"); *Lock Realty Corp. IX v. U.S. Health, L.P.*, 3:06-CV-487RM, 2009 WL 2970330 (N.D. Ind. Sept. 14, 2009); *Duffin v. Exelon Corp.,* No. 06-C-1382, 2007 WL 1385369, at *2 (N.D. Ill. May 4, 2007) ("The court also has inherent authority to reconsider interlocutory orders before entering final judgment.") (citations omitted); *Fisher v. Nat'l R.R. Passenger Corp.,* 152 F.R.D. 145, 149 (S.D.Ind.1993) ("[I]t is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment.") "A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990). "A grievous wrong may be committed by some misapprehension or inadvertence by the judge for which there would be no redress, if this power [of reconsideration] did not exist." *Id*. at 1192.

**III.    Class Certified**

The Court granted certification of the following class:

(1) all persons within the State of Illinois (2) who, on or after January 1, 2010 and on or before February 28, 2011 (3) received a non-emergency telephone call from Defendant to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and (4) *where defendant's records* do not show that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

130268352v1 0922494

**IV.     Argument**

    **A.     The Order Certifying the Class is Based on an Incorrect Finding of Fact**

The Court rejected FCS's argument regarding typicality and adequacy based on the mistaken factual finding that Plaintiff's cell phone was not listed in the records of the creditor. Specifically, the Court wrote:

> *Both of these objections are based on defendant's claim that it obtained plaintiff's telephone number from GMAC, plaintiff's original creditor.* Therefore, according to defendant, plaintiff consented to receive auto-dialed calls, although the class definition includes only those persons who have not provided their telephone number to defendant or the original creditor. "Where the named plaintiff's claim may fail on grounds unique to the named plaintiff . . . the typicality requirement for class certification may not be satisfied." Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 2002 WL 548704 at *3 (N.D. Ill. 2002).
>
> *The record, however, does not support defendant's characterization of the facts. Plaintiff's telephone number is not found* in either defendant's or *GMAC's records.* Plaintiff's wife's number is listed in GMAC's records, and her number is apparently only one digit different from plaintiff's. Plaintiff's number, however, is not in any of the records and there is nothing in those records to suggest that plaintiff consented to be called. *Accordingly, the court rejects defendant's objections to typicality and adequacy of representation.*

Dkt. 71, p. 2 (emphasis supplied).

It is undisputed, however, that FCS obtained the Plaintiff's phone number *from Plaintiff's creditor. See* Frank Russo Declaration, ¶¶ 22-23 (Dkt. 36-7, page 6 of 30 page ID #:282) and Exhibit D to Russo's Declaration, debt placement records sent to FCS (Dkt. 36-7, page 18 of 30 page ID #:294).[1] The records that the creditor gave FCS listed Plaintiff's cell phone number as his home number. (*See* Exhibit D to Russo's Declaration, Dkt. 36-7, page 18 of 30 page ID #:294). Below is an enlarged image copied from a pdf of the records that the creditor sent FCS. In the image, the subject phone number is 847-XXX-9705 (the middle three digits have been

---

[1]     A copy of Russo's Declaration is attached as Exhibit A.

redacted for privacy reasons). The other number is Plaintiff's purported work number (which is not subject to the present suit).



Paragraph 23 of Russo's Declaration stated, "When Nuvell/GMAC transmitted this account for collection to FCS, it provided two numbers as Plaintiff's contact number: 847-XXX-9705 and 312-XXX-1331." Plaintiff's cell phone number (ending in 9705) is also identified in the center of a screen shot *of the creditor's* account records. *See* Exhibit G to Russo's declaration (Dkt. 36-7, page 30 of 30 page ID #:306). Further, Mr. Russo testified that neither FCS nor the creditor skip traced or call captured Plaintiff's number. *See* Frank Russo Declaration, ¶¶ 25-26 (Dkt. 36-7, page 6 of 30 page ID #:282). Significantly, FCS called Plaintiff's cell phone only *after* the creditor gave FCS his number. *See* Frank Russo Declaration, ¶¶ 22-23 (Dkt. 36-7, page 6 of 30 page ID #:282).

5

The record shows that neither FCS nor the creditor obtained Plaintiff's number through a skip tracer or through a call capture. The fact that the creditor possessed Plaintiff's phone number is evidence that Plaintiff released the number to the creditor and thereby consented to receive auto-dialed collection calls from FCS. *See* FCC Declaratory Ruling No. 07-232, ¶ 9; *see also Cunningham v. Credit Mgmt. L.P.,* 2010 WL 3791104 (N.D. Tex. 2010) (treating creditor's possession of debtor's cell phone number as evidence that debtor consented to receive debt collector's auto-dialed calls). The class, however, contains people who were called on numbers that are not found in the records of their creditors.

Even "an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class [and] bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd.,* 637 F. 3d at 726. Further, when the claims of the class representative are "significantly weaker than those of some (perhaps many) other class members," the named plaintiff is not an adequate class representative under Federal Rule 23(a)(4). *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011) (named plaintiffs were not adequate representatives because their claims were weaker than claims of some class members). Because the named Plaintiff's TCPA claim is subject to a consent defense that may not apply to all class members, the defense destroys both typicality and adequacy.

Plaintiff's factual arguments concerning his wife's number created understandable confusion on the Court's part regarding which numbers were actually in the creditor's records. In an effort to muddy the waters, Plaintiff claimed that while his wife gave her number [ending in 9706] to the creditor, there was no evidence that he gave his number [ending in 9705] to the creditor. Dkt. 51, p. 1. The creditor's records refute Plaintiff's argument. His number, which again was not call captured or skip traced, was in the creditor's records.

130268352v1 0922494

To sum up, the evidence demonstrates that: (a) Plaintiff's creditor was in possession of Plaintiff's cell phone number before it placed the debt with FCS for collection; (b) the creditor never skip traced or call captured the 9705 number; (c) the creditor electronically sent FCS placement records containing Plaintiff cell phone number; and (d) FCS never skip traced or call captured the 9705 number. The record, properly interpreted, makes clear that Plaintiff's claim is weaker than the claims of the class members. His creditor's possession of his number gives rise to a unique defense. The order certifying the class should therefore be reconsidered.

**B.     The Class Definition Includes People Who Do Not Have TCPA Claims**

As noted above, the class definition includes individuals who released their phone numbers to the creditors whenever this fact is not shown by FCS's records. Although such individuals are class members, they do not have TCPA claims because they consented to receive FCS's collection calls by releasing their numbers to their creditors. When a class definition includes people who do not have standing to maintain the cause of action in their own right, the court should refuse to certify the class. *Oshana v. Coca-Cola Co.,* 225 F.R.D. 575, 580 (N.D. Ill. 2005), *aff'd* 472 F.3d 506 (7th Cir. 2006); *In re Sears, Roebuck & Co.,* 2007 WL 4287511, *4-*5 (N.D. Ill. 2007). If a definition "sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." *Kohen v. Pacific Investment Mgmt. Co.,* 571 F.3d 672, 678 (7th Cir. 2009). "[A] district court must make whatever factual and legal inquiries are necessary to ensure that requirements for certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *American Honda Motor Co., Inc. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir. 2001)).

To avoid including in the class individuals who do not have TCPA claims, the definition must take account of the evidence in the possession of the class members' creditors. The

7

evidence in the possession of the creditors, who are not parties to this action, controls whether class members consented to receive FCS's calls under the FCC's declaratory order by releasing their numbers to their creditors. Because the class definition did not account for this evidence, it is overbroad. The case law supports this conclusion.

In *West,* the Seventh Circuit held that the class should not have been certified because the broker's misrepresentations about the bank were made orally and not publicized. Therefore, the misrepresentations could not have affected the market price paid by purchasers of the stock, and thus the class members could not have relied on or been damaged by the oral misrepresentations. *West,* 282 F.3d at 938. In *Oshana,* 472 F.3d at 514, and *In re Sears, Roebuck & Co.,* 2007 WL 4287511, *4-*5, the courts denied motions for class certification under the Illinois Consumer Fraud Act ("CFA"), 815 ILCS § 505/10a, because the proposed classes included people who did not have claims under the ICFA because they had not been misled by the defendants' conduct. In *Oshana*, the Seventh Circuit held that the class was fatally overbroad because it included people who bought fountain Diet Coke knowing it contained saccharin, and people who bought it without such knowledge. 472 F.3d at 514.

In these cases, the classes were overbroad because some class members suffered no damage as a result of the defendants' alleged deceptive practices. Here, the definition of the certified TCPA class is overbroad because some class members consented to receive FCS's calls by releasing their numbers *to the creditors*, and they therefore lack TCPA claims. Consistent with the FCC's regulatory order, the Court should therefore revisit the certification order to exclude from the class answer persons who provided their cellular telephone to their creditor.

  C.  **Individual Issues Predominate Over Common Issues.**

FCS's calls to a cell phone violate the TCPA only if the called person did not consent to receive the call. Whether the called person consented to receiving the call depends on whether

8

he gave his number to the creditor on whose behalf FCS was calling. FCS argued that individual issues regarding whether each class member consented in this manner predominated over any common issues. The Court disagreed because the "class includes only those persons who have been contacted on their cellular phone and who have not consented to the calls." Dkt. 71, p. 2. But the Court's ruling on this point is inconsistent both with the FCC's declaratory order and with the class definition.

Under the FCC's order, a consumer consents to a debt collector's call if the consumer gives the cell phone number to the creditor in connection with the debt. FCC Declaratory Ruling No. 07-232, ¶ 9; *Cunningham,* 2010 WL 3791104. Here, however, the class definition does not exclude people who provided their cell phone numbers to their creditors. Rather, the class includes any person who received a call on a cell phone with a specified area code, "where defendant's records do not show that the person provided the number to the defendant or the original creditor." A person who released his number to the creditor and who therefore has no TCPA claim will still be a member of the class if FCS's records did not show that the member gave the number to the original creditor. As a result, under this definition and under the FCC order, the Court will have to determine for *each class member* whether he or she consented to receiving FCS's calls by releasing the number FCS called to the creditor in connection with the debt. Determining whether consent was provided in this manner will necessitate a review of not only the records in FCS's possession, but also the records in the possession of the creditors, who are not parties. FCS has explained that identifying consent is a time-consuming process because it must examine creditor records (which often are not in its possession). *See* Russo Declaration, ¶¶ 1-21 (Dkt. 36-7).

9

In addition, the Court will have to determine whether the number called by FCS was assigned to a cell phone (and not a landline) at the time FCS called the number. *See* Russo Declaration, ¶¶ 13, 15 (Dkt. 36-7). This is because people can port numbers from landlines to cell phones and vice versa. *See* Federal Communications Commission, Wireless Local Number Portability (Wireless LNP) Frequently Asked Questions, available at http://www.fcc.gov/cgb/Number Portability accessed February 4, 2011; (FCC Release). A wireless consumer also has the ability to change service providers within the same local area and still keep the phone number. *Id. See also* 47 U.S.C. § 251(b)(2) (requiring local exchange carries to provide local number portability to the extent feasible in accordance with FCC requirements).

There is no generalized evidence that will resolve at once for all class members the dispositive issues of (a) whether the number called was assigned to a cell phone and (b) whether the class member released the number to the creditor or FCS. As Mr. Russo's declaration discussed, resolution of these propositions will turn on a different set of evidence for each class member. For instance, even if the creditor did not provide the number to FCS, debtors often provide their number to FCS. This requires an examination of each record kept by FCS. Russo Declaration, ¶¶ 17-18 (Dkt. 36-7).

Federal Rule 23(b)(3) requires that common issues of fact or law predominate over questions affecting only individual class members. Common issues are predominant only if "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Foreman v. PRA III, LLC,* 2007 WL 704478 (N.D. Ill. 2007); *Gene and Gene, LLC v.*

*Biopay LLC,* 541 F.3d 318, 328 (5th Cir. 2008). The predominance inquiry looks to "how a trial on the merits would be conducted if a class were certified." *Biopay LLC,* 541 F.3d at 328.

In *Hicks v. Client Services, Inc.,* 2008 WL 5479111, *7-*8 (S.D. Fla. 2008), the court refused to certify a TCPA class consisting of debtors who received calls from a debt collector on their cell phones because evidence concerning whether each class member consented to receive the calls (by releasing his or her phone number to the creditor) would be different for every class member. Deciding the class's claim would necessitate "mini-trials on consent of every class member." *Id.* The court in *Versteeg v. Bennett, Deloney & Noyes, P.C.,* 2011 WL 159805, at *3 (D. Wy. Jan. 13, 2011), refused to certify a TCPA class against a debt collector for the same reason. *See also Biopay LLC*, 541 F.3d at 328 (reversing certification of an unsolicited fax case because of predominant individual issues concerning whether class members consented to receive the faxes); *Levitt v. Fax.com,* 2007 WL 3169078, *4-*5 (D. Md. 2007) (same); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1163 (S.D. Ind. 1997) (same).

Here, for every class member who received an automated call on a cell phone, the Court would have to review the records of FCS, the records of the creditor, and the records of the class member to determine whether the class member consented to the call by releasing his or her number to either FCS or the creditor. Significantly, the Court will also have to resolve whether the number was assigned to a cell phone when FCS made the call. As in *Hicks* and *Versteeg*, the determination regarding consent will vary from class member to class member and turn on different evidence for every class member. Therefore, the issue of consent precludes certification under Rule 23(b)(3).

11

### D. Plaintiff Cannot Represent a Skip-Trace Class Because His Number Was Not Skip-Traced.

Plaintiff misleadingly suggested that the determination of consent was a "ministerial" function because the FCS called some people on numbers it obtained from third-party skip tracers, and there is no evidence that these people consented to receive FCS's calls. Specifically, Plaintiff argued:

> Defendant's other objections to class certification are equally without merit. The so-called "individual issues" that Defendant claims will predominate this action are in fact resolved through the class definition and hardly more than hypothetical. To the extent that they will be legitimate issues at all, they are capable of resolution through routine ministerial inquiries into Defendant's business records. With respect to the issue of "consent," for instance, Defendant has reviewed its records to identify potential class members and **already determined that it has no evidence of consent for at least 238 of those persons**. As will be shown below, each of the Rule 23 requirements for class certification is satisfied. A class action is the superior method for the fair and efficient adjudication of this controversy.

Dkt. 51, p. 2. Plaintiff's argument is misleading because it focuses on cell phone numbers that were skip traced. But Plaintiff's number was not skip traced. Accordingly, Plaintiff cannot represent this so called "ministerial" class of skip-traced numbers. Second, Plaintiff is incorrect to suggest that a skip-traced number equates with the absence of consent. Rather, in a majority of the 238 skip traces that FCS performed, FCS has obtained documentation which demonstrates that the skip traced cell phone numbers were originally provided creditor by the debtor. *See* Exhibit B (excerpts of FCS's FRCP 30(b)(6) deponent, Frank Russo, pp. 106-10, 137-38).

### V. Conclusion

Plaintiff's creditor had Plaintiff's cell phone number. The class is not limited to individuals whose creditors were in possession of their cell phone numbers. As a result, Plaintiff's claim is not typical of the claims of the class members, and he is not an adequate class representative. Plaintiff's claim is weaker than the claims of the class members. Plaintiff's

12

confusing emphasis on his wife's phone number led the Court to find, incorrectly, that Plaintiff's number was not in his creditor's records, but it was, as the factual discussion above makes clear. This factual error warrants reconsideration.

Reconsideration is also merited for purely legal reasons. First, the class contains individuals who have no TCPA claims because they released their numbers to their creditors. The class definition should account for evidence in the possession of the creditors, but it does not. Second, individual issues concerning consent predominate over common issues. There is no classwide evidence that resolves for all class members whether they consented to be contacted on their cell phones.

WHEREFORE, for the reasons set forth above, Defendant FIRST CREDIT SERVICES, INC. respectfully requests that this Honorable Court reconsider and vacate its order certifying the class.

By: /s/ David M. Schultz

David M. Schultz
One of the Attorneys for Defendant
FIRST CREDIT SERVICES, INC. dba
ACCOUNTS RECEIVABLE TECHNOLOGIES

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
Phone No: (312) 704-3000
Fax No: (312) 704-3001
dschutlz@hinshawlaw.com
jvlahakis@hinshawlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2012, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

<u>/s/ James C. Vlahakis</u>
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130268352v1 0922494