**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself | ) | |
| and all others similarly situated | ) | |
| Plaintiff | ) | 11-cv-1379 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| FIRST CREDIT SERVICES, INC. | ) | Magistrate Judge Morton Denlow |
| dba ACCOUNTS RECEIVABLE | ) | |
| TECHNOLOGIES | ) | |
| Defendant. | ) | JURY DEMAND |

**PLAINTIFF'S OBJECTION TO FCS' MOTION
TO RENEGE ON ITS FILED STIPULATION**

Plaintiff submits the following response in opposition to First Credit Services, Inc. d/b/a

Accounts Receivable Technologies (hereinafter referred to as "FCS" or "Defendant") motion to

renege on its filed stipulation, which requires it to produce all consent based discovery for the class

by February 22, 2011 or be barred from introducing any additional consent based evidence.  In

support thereof, plaintiff states

1.      FCS cannot seek to withdraw or modify its stipulation when it entered into the

stipulation with full knowledge of the scope of consent discovery and the time and effort required

to respond to such discovery.  In fact, FCS entered into the stipulation on December 29, 2011 (1)

after the district court certified the class; (2) after the deposition in November 2011 of FCS's

president where he testified that FCS did not have consent evidence for 95% of the class; (3) after

the September 8, 2011 affidavit from the president of FCS[1] stating that it takes 4 to 45 minutes to

---

[1] FCS has attached to its current motion the same September 8, 2011 affidavit from Mr.
Russo.  The fact that FCS is now using an affidavit from September 2011 demonstrates that FCS
was well aware of the time frame required to determine consent for the class well before it
entered into the stipulation.

determine consent per class member and (4) after ten months have passed since plaintiff propounded discovery requesting any evidence showing consent to call the class.  FCS voluntarily agreed to the stipulation at issue in order to delay plaintiff from filing his motion for summary judgment and it should not be allowed to renege on its agreement after it benefitted from plaintiff delaying his motion for summary judgment.

2.      The stipulation, filed by FCS' counsel on December 29, 2011, provides in part: "FCS stipulates that it has until February 22, 2012 to supplement its discovery responses to show consent as to the class and that **failure to do so will be an absolute bar** to later introducing evidence of consent as to those class members."  Doc. 72 (Emphasis Added).

3.      FCS has now filed a motion that seeks to renege on its stipulation because it claims it needs more time to obtain consent discovery.

4.      FCS' motion should be denied as (1) the filed stipulation is binding, and (2) it has not shown manifest injustice or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law.

## THE STIPULATION IS BINDING

5.      "Party's stipulations are binding and may not be controverted at trial or on appeal*." Miller v. West, 1998 U.S. App. LEXIS 17646 (7th Cir. 1998); Help at Home, Inc. v. Medical Capital, L.L.C., 260 F.3d 748, 753 (7th Cir. 2001) citing Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal.") *See also Charter Bank & Trust of Illinois v. Edward Hines Lumber Co.*, 233 Ill.App.3d 574, 580 (1992) (A party cannot dispute to an agreed order to which he stipulated).  *See*

*also Riley v. Walgreen Co.*, 233 F.R.d. 496 (S.D. Tex 2005) (Under Federal Rule of Civil Procedure 29, parties' stipulation concerning the deadline for answering interrogatories is binding and enforceable.)

6.      "Once made, a stipulation is binding unless relief from the stipulation is necessary to avoid 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law. *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989). The district court's decision to hold the defendant to his stipulation will be upheld unless 'the court has clearly and unmistakably abused its discretion.' *Id.*" *United States v. Wingate*, 128 F.3d 1157, 1160 (7th Cir. 1997).

7.      Even in criminal proceedings were the personal stakes of the parties may be higher, stipulations constitute binding admissions that preclude further challenge. *United States v. Newman*, 148 F.3d 871, 876 (7th Cir. 1998)

8.      Because the stipulation is binding, it should be enforced as drafted and filed by FCS.

**NEITHER MANIFEST INJUSTICE NOR INADVERTENCE HAS BEEN SHOWN**

9.      A stipulation may only be withdrawn when necessary to avoid manifest injustice or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law. *Graefenhain supra.*

10.      FCS has not argued let alone shown manifest injustice or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law. It would be hard for it to make such an argument as it entered into the stipulation with full knowledge of the scope of consent discovery and the time and effort required to respond to such discovery. Once again, FCS entered into the stipulation on December 29, 2011 (1) after the district court certified the class; (2)

after the deposition in November 2011 of FCS's president where he testified that FCS did not have

consent evidence for 95% of the class[2]; (3) after the September 8, 2011 affidavit from the president

of FCS stating that it takes 4 to 45 minutes to determine consent per class member and (4) after ten

months have passed since plaintiff propounded discovery requesting any evidence showing consent

to call the class.

11.     FCS has known all along how long it would take to determine consent on a class wide

basis.  In fact, it asserts that it originally objected to this discovery because it believed it would take

a long amount of time and be burdensome[3].

12.     Further, FCS has repeatedly delayed discovery as well as violated discovery orders,

---

[2]  FCS appears to make misrepresentations of fact to bolster its argument.  FCS asserts that it decided to wait to undertake consent discovery until after certification was granted.  Doc. 85 p.5.  This is not true.  In addition to the testimony from November 2011 that FCS had been obtaining consent discovery for the class,  FCS' counsel sent an e-mail two days after certification stating: "Since the court seems to suggest that we need to administratively eliminate class members, it would appear reasonable to continue to do so on a rolling basis **as we have been doing**." *Exhibit 1*.  *See* also *Exhibit 2* which is an e-mail from November 17, 2011 confirming that FCS has been working on consent discovery for the class and confirming that "Mr. Russo will testify that express consent has been obtained in contracts where the debtor provided contact information which was determined to be a cell phone based upon a recent scrub.  To date, via a disk, we have provided you with contracts from Women's Workout World, Gold's Gym, Anytime Fitness, Fitness Express, GMAC, among others.  We are in the process of obtaining additional contracts from these creditors as well as Advanced America, Honda, Hyundai, Starcast, Toyota, US Bank, Volkswagon and World Omni."

[3]  FCS inexplicably argues that it did not have to produce consent discovery earlier because plaintiff has not sought to compel that discovery.  Yet, it is not plaintiff's obligation to compel discovery that solely relates to a defense by FCS.  It is well settled that "a party shall not be permitted to use any information not so disclosed as evidence at a trial. Fed. R. Civ. P. 37(c)(1). This sanction is 'automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.' " *David*, 324 F.3d at 857 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).  *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005).

which has resulted in three motions to compel[4] and this Court granting plaintiff's motion for a rule to show cause. Any delay in obtaining consent discovery rest solely at the fault of FCS.

13.     In short, nothing has changed since FCS filed the stipulation except the fact that it has not expeditiously sought the information at issue.

14.     Even if this Court were to convert FCS arguments asserting good cause to an argument claiming manifest injustice, FCS could not meet its burden.

15.     In attempting to support its argument that good cause exits to extend the stipulation, FCS rests heavily on the fact that it has now filed a motion to reconsider the class certification order along with its arguments that it had consent to call plaintiff in an attempt to show that it would be fair to be allowed more time.

16.     It is apparent that FCS filed the motion to reconsider solely to a try to create some reason why it should be allowed more time to seek consent discovery as the motion to reconsider does not raise a single new argument or cite to a new case that was not already rejected by the district court.

17.     At best, FCS has pointed out a scrivener's error where the district court asserted that there was no record of plaintiff's telephone number when it is more accurate that there is no record of consent for plaintiff's telephone number. Obviously, FCS had plaintiff's telephone number as it called it. As such, at most the district court will correct the assertion which does not impact the size and identity of the class nor impact any discovery that may be needed.

---

[4] The third motion to compel is currently pending, but FCS has already breached its agreement made in court to provide the updated class list by February 2 and the balance of discovery by February 10, 2012. FCS waited until February 10, 2011 to produce the update class list and as of February 13, 2012, FCS still has not produced any of the contracts with the underlying creditors and does not have a date when it will be able to do so.

18.     Similarly, despite not having a shred of any evidence showing consent, FCS argues to this court that plaintiff consented to be called[5] and will need to be replaced as a class representative such that it should be allowed to disregard its stipulation.

19.     By focusing on the mere existence of plaintiff's telephone number in GMAC's records, FCS makes a mountain out of a molehill.  In every single TCPA case that will ever be filed, the plaintiff's telephone number will inevitably appear in the caller's or the creditor's business records because they would have of course obtained the number and used it to call the Plaintiff.  In fact, according to FCS, the vast majority of the cellular telephone numbers it called came from the creditor.

20.     Yet, the essential issue for the consent defense is whether the plaintiff or the class members *provided* them with that number.  In this case, defendant has not submitted a single document indicating that Plaintiff provided his number to GMAC because no such document exists.  Plaintiff's credit application provided only his home telephone number (*See* Doc. #36-1 at p. 12) and neither Plaintiff's phone records nor GMAC's records indicate that he ever even called GMAC from his cellular telephone (*See* Doc. #36-8).  Further, FCS' president testified at its Rule 30(b)(6) deposition as follows:

> 17     Q.     All right. Just to be clear, when
> 18   you are referring to Ms. Pesce calling, giving
> 19   her cell phone, there is no record of her
> 20   giving the 9705 number, is there?
>
> 21     A.     There isn't.

---

[5]  Ironically, FCS claims it takes 4 to 45 minutes to review the records to determine if a person consented to be called, yet plaintiff filed this case in February 2011 and FCS still cannot find any evidence of consent as to plaintiff.

22    Q.    There is no record of GMAC
23  verifying how the information from Mr. Pesce,
24  that he gave the 9705 information, is there?

25    A.    There is no indication of it right
132    1  now.  But I can tell you this investigation to
2  get that is not over, my friends.

3    Q.    All right.  Well we'll deal with it
4  if it comes up later.  Just let's just deal
5  with it what we have now?

6    A.    Right it is not over.

7    Q.    Do you have any communications from
8  Mr. Pesce or have a mailing list, any documents
9  of Mr. Pesce, giving the number 9705?

10    A.    I don't believe so.

11    Q.    Are there any notations or any
12  documents from GMAC showing that Mr. Pesce
13  provided that 9705 number?

14    A.    I did not see that.

15    Q.    So it seems to me that your
16  exclamation point, to give it, is all based
17  upon your belief that they had to get it from
18  somewhere and it probably happened; am I wrong?

19    A.    It is there, Keith and we'll find
20    it.

21    Q.    You are saying find it.  Meaning
22  you don't have it right now; correct?

23    A.    We don't have it right now.  But I
24  can assure you we will find it.

*See* excerpts of Mr. Russo's deposition testimony attached hereto as *Exhibit 3* 131:17-25; 132.

21.    FCS cites to one case out of the Northern District of Texas, *Cunningham v. Credit*

7

*Management, LP*, 2010 WL 3791104 (N.D. Tex. 2010) to support its contention that the mere existence of Plaintiff's telephone number in GMAC's records establishes consent. *Cunningham* makes no such holding, but was a pro se action where the court sanctioned the plaintiff for frivolous litigation and weighed a variety of evidence to show consent. Further any such holding that mere possession of a number equates to consent would make consent meaningless and run afoul of the FCC's order that the caller is required to maintain records of consent and it bears the burden to show that the wireless number was *provided by the consumer to the creditor*, and that such number was provided <u>during the transaction</u> that resulted in the debt owed.[6] *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Ruling"), 23 F.C.C.R. 559 at ¶ 10 (Dec. 28, 2007)(Emphases added).

22.     Notably, the plaintiff in *Cunningham* "refused to disclaim that he provided the telephone number to Time Warner" whereas in this case, both plaintiff and his wife deny that they provided the number to GMAC.

23.     Plaintiff testified that: "I believe I never provided my cell phone number." *See Exhibit 4 - Deposition of Plaintiff Vito Pesce at 53:14-20*; Plaintiff further testified: "Q. And did you provide Fair [sic] Credit Services your cell phone number? A. No. They obviously had it if you look at your notes.", 57:4-8. Finally plaintiff testified that he usually does not give out his cell number: "Q. You said you don't give out your cell phone willy-nilly. What do you mean by that? A. I'm cautious on it. It's even on the Federal Do-not-call list." 59:4-7.

24.     In addition, this court allowed FCS to depose Mr. Pesce's wife in an abundance of

---

[6]     The FCC ruling is binding. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446 (7th Cir. 2010) (applying Hobbs Act to FCC interpretation of TCPA).

caution because FCS hoped Mrs. Pesce would admit she provided Mr. Pesce's cell phone numbers

even though none of the records even show the existence of her providing his number.  Mrs. Pecse

testified as follows:

Q. Have you ever provided his cell phone
7 number ending in 9705 to Saab Financial?

8 A. No.

9 Q. Did you provide his cell phone number
10 ending in 9705 to Nuvell Credit?

11 A. No.

12 Q. Did you provide his cell phone number
13 ending in 9705 to GMAC Credit?

14 A. No.

15 Q. Have you had any discussions with your
16 husband regarding whether or not he provided his
17 cell phone number ending in 9705 to Saab Financial,
18 Nuvell Credit, or GMAC Credit?

19 A. No.

20 Q. Did your husband ever tell you that he
21 received a call on his cell phone related to an
22 alleged debt for the Saab vehicle?

23 A. No.

*Exhibit 5 - Deposition of Plaintiff's Wife Laura Pesce at 12:6-23, 22:13-19, 27:21-24, 28:1-6.*

     25.    Because FCS has no basis to even argue that *anybody* provided Mr. Pesce's cell

phone/consent to FCS or the underlying creditor, it is apparent that its motion to reconsider is

baseless and only filed to artificially create a basis for its motion to extend the stipulation.

     26.    FCS' artificial attempt to create good cause by filing the motion to reconsider skates

on the edge of bad faith. FCS voluntarily agreed to the stipulation after the class was certified, after it was already conducting class discovery as to consent and after it knew how long the process would take. Therefore, it cannot show inadvertence or manifest injustice when the circumstances surrounding the stipulation have not changed.

### THE COSTS TO FCS WILL BE THE SAME

27.     FCS makes a fox guarding the hen house type of argument when it asserts that it did not want to hire additional staff to conduct consent discovery as that would diminish the insurance policy. This argument fails for two reasons. The first reason is that the insurance policy at issue excludes non attorney costs of defense such as the costs for FCS' staff to look for consent evidence. The second reason why this argument fails is that FCS will be undertaking the same amount of work[7], but it is just seeking additional time to perform the work. As such, the costs will be the same.

### FCS HAS FAILED TO INFORM THE COURT WHAT PROGRESS HAS BEEN MADE

28.     FCS seeks to at least double the amount of time it stipulated to in order to engage in additional class discovery. Yet, FCS has failed to inform the Court or plaintiff what progress has been made and attempts to mislead the Court in the amount of work it must undertake by arguing the class may be twice the size that it actually is or that it has yet to really start searching for consent.

29.     FCS inexplicably argues that there may be over 6,000 class members when it knows that there are only 3,111 - 3,113 possible class members. See *Exhibit 2* e-mail from FCS counsel confirming the number of class member. See *Exhibit 3* FCS' Rule 30b(6) witness who confirmed the class was 3,113 persons. Further, FCS produced a class list on February 10, 2012 that

---

[7] FCS' counsel asserts that he did not learn of the fact that FCS ordered the wrong records until February 2, 2011, but the motion is silent on the date that FCS discovered this fact.

confirmed the class size is 3,111.

30.     In fact, FCS' counsel asserted in the deposition that the class included 3,113 persons:

                                        123
3     MR. VLAHAKIS:  We gave you the
4     3,113.  That was persons as opposed to cell
5     phone numbers.


              124
9     Q.     So back to paragraph seven, I'll
10    read it.  I'll [s]witch the number.  I want you
11    to tell me if I'm correct.  During the relevant
12    time period of the proposed class, January 20,
13    2010 and February 28, 2011, FCS called 3,113
14    cell phone numbers in Illinois.  Is that
15    correct?
16    A.     That's correct.

*Exhibit 3.*

31.     It is apparent that FCS attempts to enlarge the class to show that its task is greater than it is in order to fabricate an excuse on why it needs more time.

32.     Along these lines, FCS implies that it has not made any progress on the class discovery in order to incur sympathy.  Yet, plaintiff has already shown that FCS has been working on determining class consent discovery for some time.  *See Exhibits 1-3.*

33.     Based on FCS communications and the fact that it has been working on class consent discovery for many months, plaintiff believes that it is likely that FCS has made substantial progress on determining consent for the 3,111 -3,113 class members, but FCS wants additional time in order to attempt to find a defense for every single class member much the same way it has attempted to find consent as to plaintiff.

34.     If FCS was forthright with the Court or plaintiff[8] on the progress that has been made rather than making general arguments based on blatant misrepresentations, plaintiff would have been inclined to agree to a short extension.   However, plaintiff does not believe an extension is appropriate when the request is based on misstatements and lack of candor.

**CONCLUSION**

FCS' motion to modify the stipulation should be denied as it has not shown manifest injustice or any inadvertence in its stipulation.

Respectfully submitted,

/s/  Keith J. Keogh
Plaintiff's attorney

Keith J. Keogh
Craig Shapiro
Timothy Sostrin
KEOGH LAW, LTD.
101 N. Wacker Dr., Ste. 605
Chicago, Illinois   60606
312.726.1092/312.726.1093 (fax)

---

[8] FCS has not made any attempts pursuant to Rule 37 to discuss this matter with plaintiff except to raise it at the hearing on last motion to compel and the last court appearance before Judge Gettleman.