**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated | ) ) | |
| Plaintiff | ) ) | 11-cv-1379 |
| v. | ) ) | Judge Robert W. Gettleman |
| FIRST CREDIT SERVICES, INC. dba ACCOUNTS RECEIVABLE TECHNOLOGIES | ) ) ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | JURY DEMAND |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATION**

Plaintiff, Vito Pesce, respectfully submits the following response in opposition to Defendant's Motion for Reconsideration of the Court's order granting class certification:

## I.    FCS's Motion Should be Denied Outright

A motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale De Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996)(citations omitted). Yet FCS **does not present a single argument or cite a single case that it did not already raise** in opposition to Plaintiff's motion for class certification. In fact, entire paragraphs and passages of FCS's motion are lifted nearly verbatim from its opposition memo. *See e.g., Doc. 81 at p. 11 (copied from doc. 36 at p. 10); doc. 81 at p. 8 (copied from doc. 36 at p. 18).* The Court has already rejected each of these arguments, so there is nothing new to consider even if the Court wanted to do so.

FCS makes much ado about what is, at best, a scrivener's error where the district court asserted that there was no record of plaintiff's telephone number in GMAC's records when it is more

accurate that there is no record of consent for plaintiff's telephone number. *Doc. 71 at p. 2*. While it is true that Plaintiff's telephone number does appear in GMAC's records, this fact is inconsequential because those records **do not show that Plaintiff** *provided* **that number to GMAC** or that Plaintiff in any other way consented to receive calls on his cellular telephone, which FCS *must* establish in order to succeed on a consent defense. There is nothing whatsoever interesting or meaningful about a creditor's mere possession of a telephone number because a creditor obviously possesses every number that it ever calls regardless of how it *obtained* such numbers. Since Plaintiff never *provided* his telephone number to GMAC, this is a non issue.

As will be discussed further below, the Court's analysis remains correct regardless of any misunderstanding about the mere appearance of Plaintiff's telephone number in GMAC's records, which cannot establish consent and does not make Plaintiff an atypical or inadequate class representative because **nearly all class members are subject to the exact same (ill fated) defense**. FCS alleges that of the 6,381 cell phone numbers at issue in the class, 6,127 were provided to it by the underlying creditors, exactly as it alleges that GMAC gave it Plaintiff's number. FCS's typicality/adequacy argument is destroyed by its own **admission that approximately 96% of the class members stand in the exact same position as Plaintiff**.

## II. The Mere Appearance of Plaintiff's Telephone Number in GMAC's Records Does not Establish Consent

To begin, "consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, 2011 U.S. App. LEXIS 18366, *3-4 (9th Cir. September 2, 2011), citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Ruling"), 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("[W]e conclude that the creditor should be

responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.[1] Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent."); *see also Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 503-04 (N.D. Ill. 2009)(Nolan, J.)*; Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 43874, *7-8 (N.D. Ill. 2010)(Zagel, J.).[2]

To establish consent, FCS must prove that the class members provided their numbers either directly to it or to their creditors during the transaction that resulted in the debt owed. *See 2008 FCC Ruling*, 23 FCC Rcd. 559 at ¶10 ("We emphasize that prior express consent is deemed to be granted only if the wireless number was *provided by the consumer* to the creditor, and that such number was provided during the transaction that resulted in the debt owed.") (emphasis added); *Sengenberger*, 2010 U.S. Dist. LEXIS 43874 at *7-8.

By focusing on the mere existence of Plaintiff's telephone number in GMAC's records, FCS makes a mountain out of a molehill. In every single TCPA case that will ever be filed, the plaintiff's telephone number will inevitably appear in the caller's or the creditor's business records because they would have of course obtained the number and used it to call the Plaintiff. The essential issue for the consent defense, however, is whether the plaintiff *provided* them with that number. In this

_____

[1] FCS has not produced and cannot produce any such records in this case because none exist.

[2] A ruling requiring a plaintiff to demonstrate the absence of consent would violate the Hobbs Act (28 U.S.C § 2342(1)) because the FCC has previously ruled that the caller bears the burden of proof to demonstrate "prior express consent." *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446 (7th Cir. 2010) (applying Hobbs Act to FCC interpretation of TCPA).

case, FCS has conceded that there is *no evidence whatsoever that Plaintiff provided his number to GMAC. See Doc. 58 at* ¶ 4 ("Exhibit 2 does not specifically identify how GMAC obtained Plaintiff's number."). That is why FCS attempted to prove consent by pointing to Plaintiff's wife's provision of *her* number (one digit different than Plaintiff's number) to GMAC and arguing that it was just a typo. *See Exhibit 1 - Transcript of Proceedings* at pp 3-4, 7-8.

Defendant has not submitted a single document indicating that Plaintiff provided his number to GMAC because no such document exists. Plaintiff's credit application provided only his home telephone number (*See* Doc. #36-1 at p. 12) and neither Plaintiff's phone records nor GMAC's records indicate that he ever even called GMAC from his cellular telephone (*See* Doc. #36-8). Further, FCS testified at its Rule 30(b)(6) deposition as follows:

17    Q.    All right. Just to be clear, when
18    you are referring to Ms. Pesce calling, giving
19    her cell phone, there is no record of her
20    giving the 9705 number, is there?

21    A.    There isn't.

22    Q.    There is no record of GMAC
23    verifying how the information from Mr. Pesce,
24    that he gave the 9705 information, is there?

25    A.    There is no indication of it right
 1    now.  But I can tell you this investigation to
 2    get that is not over, my friends.

 3    Q.    All right.  Well we'll deal with it
 4    if it comes up later.  Just let's just deal
 5    with it what we have now?

 6    A.    Right it is not over.

 7    Q.    Do you have any communications from
 8    Mr. Pesce or have a mailing list, any documents
 9    of Mr. Pesce, giving the number 9705?

4

10    A.    I don't believe so.

11    Q.    Are there any notations or any
12    documents from GMAC showing that Mr. Pesce
13    provided that 9705 number?

14    A.    I did not see that.

15    Q.    So it seems to me that your
16    exclamation point, to give it, is all based
17    upon your belief that they had to get it from
18    somewhere and it probably happened; am I wrong?

19    A.    It is there, Keith and we'll find
20    it.

21    Q.    You are saying find it.  Meaning
22    you don't have it right now; correct?
23    A.    We don't have it right now.  But I
24    can assure you we will find it.

*See Exhibit 2 - FCS's 30(b)(6) Deposition  at 131:17-25; 132.*

The only plausible explanation for the appearance of Plaintiff's telephone number in GMAC's

records is that GMAC used a so called "skip-tracing" service to obtain Plaintiff's cellular telephone

number before transferring the account to FCS.  In any event, it is not Plaintiff's burden to prove a

negative (lack of consent), but FCS's burden to prove that it had consent.

FCS cites to one case out of the Northern District of Texas, *Cunningham v. Credit

Management, LP*, 2010 WL 3791104 (N.D. Tex. 2010) to support its contention that the mere

existence of Plaintiff's telephone number in GMAC's records establishes consent.  *Cunningham*

makes no such holding,[3] however, but was a pro se action where the court sanctioned the plaintiff

---

[3] To the extent that Cunningham can be read as making such a holding, it is contrary to the 2008 FCC Ruling and therefore violates the Hobbs Act. *See supra, footnote 2*.  The *pro se* Plaintiff in *Cunningham* likely never cited to the FCC ruling, as the court makes no reference to the ruling in its opinion.

for frivolous litigation and weighed a variety of evidence to show consent. Notably, the plaintiff in

*Cunningham* "refused to disclaim that he provided the telephone number to Time Warner" whereas

in this case, both Plaintiff and his wife deny that they provided the number to GMAC or FCS. In his

deposition, Plaintiff testified as follows:

> 14    Q. Is your more accurate answer today that
> 15    you don't recall or do you believe that your
> 16    answer in Paragraph 13 that you never provided
> 17    your cell phone number is the more accurate
> 18    answer?
> 19    A. I believe I never provided my cell
> 20    phone number.

and further:

> 4    Q. And did you provide Fair [sic] Credit
> 5    Services your cell phone number?
> 6    MR. VLAHAKIS: Objection, asked and answered.
> 7    THE WITNESS: No. They obviously had it if
> 8    you look at the notes.

and finally:

> 4    Q. You said you don't give out your cell
> 5    phone willy-nilly. What do you mean by that?
> 6    A. I'm cautious on it. It's even on the
> 7    Federal Do-not-call list.

*See Exhibit 3 - Deposition of Plaintiff Vito Pesce at 53:14-20, 57:4-8, 59:4-7.* Plaintiff's wife,

Laura Pesce, also testified at her deposition that she never provided Plaintiff's number to GMAC

or FCS:

> 6    Q. Have you ever provided his cell phone
> 7    number ending in 9705 to Saab Financial?
> 8    A. No.
> 9    Q. Did you provide his cell phone number
> 10    ending in 9705 to Nuvell Credit?
> 11    A. No.
> 12    Q. Did you provide his cell phone number

6

13  ending in 9705 to GMAC Credit?
14      A. No.
15      Q. Have you had any discussions with your
16  husband regarding whether or not he provided his
17  cell phone number ending in 9705 to Saab Financial,
18  Nuvell Credit, or GMAC Credit?
19      A. No.
20      Q. Did your husband ever tell you that he
21  received a call on his cell phone related to an
22  alleged debt for the Saab vehicle?
23      A. No.

and further:

21      Q. Okay. Did you ever speak with Nuvell to
22  update your husband's contact information to
23  identify his cell phone?
24      A. No

and further:

1       Q. And the same question with regard to --
2   I'm trying to get all the entities covered here.
3   Did you ever call GMAC to update the
4   contact information to identify your husband's cell
5   phone?
6       A. No.

and finally:

Q.      Fair enough. With all that in mind, did
14  he ever have a discussion with you regarding how he
15  believed ART may have gotten his cell phone number?
16      A. No. He just -- we have no idea, because
17  my number is it. My number goes on everything,
18  because I'm the main number. My number goes on all
19  contracts, bills. Everybody has to call me.

*See Exhibit 4 - Deposition of Plaintiff's Wife Laura Pesce at 12:6-23, 22:13-19, 27:21-24, 28:1-6.*

Neither Plaintiff nor his wife ever provided GMAC or FCS with Plaintiff's telephone number or

otherwise consented to the calls. For all of the reasons stated above, FCS's consent defense against

Plaintiff fails.

7

### III.    Plaintiff is an Adequate Class Representative with Claims Typical of the Class

Despite the failure of its consent defense against Plaintiff, FCS argues (again) that the purported defense somehow makes Plaintiff an inadequate class representative with claims atypical of the class.  This contention fails because FCS alleges that of the 6,381 cell phone numbers at issue in the class, 6,127 were provided to it by the underlying creditors, exactly as it alleges that GMAC gave it Plaintiff's number. *See Doc.* 85 at p. 3.  FCS can therefore apply the *exact same defense to at least 96% of the  class members.*  FCS also admitted, in its opposition to class certification, that it can even attempt to apply the same defense to the remaining 4% of class members. *Doc. # 36 at p. 5* ("Class members whose cell phone numbers were provided to FCS by a skip trace company would have viable TCPA claims *as long as they had not consented to receive FCS's calls (by for example giving the number to the creditor*).")(emphasis added).  In other words. all class members are subject to the same defense that FCS now claims to make Plaintiff inadequate and atypical.

The class certified by the Court excludes only those persons who "**provided** [their] number to the defendant or the original creditor." *Doc. 71 at p. 1 (emphasis added)*.  As such, Plaintiff and every other eligible person whose telephone number appears in the original creditor's business records are class members as long as those records do not also show that the person actually *provided* his or her number to the creditor.  FCS can apply the same (ill fated) argument that it makes against Plaintiff to any other class member.  FCS's consent defense is, therefore, not "peculiar to Plaintiff" such that it could destroy typicality or adequacy; the other class members are "subject to the same defense." *See CE Design Ltd. v. King Architectural Metals, Inc.*, 673 F.3d 721, 725 (7th Cir. 2011).  Moreover, even if there were an arguable defense unique to Plaintiff, "class certification will only be defeated if the unique and arguably dispositive issue is likely to distract the named plaintiff

8

because it is predictable that the issue will usurp a significant portion of the named plaintiff's time and energy." *Gilmore v. Southwestern Bell Mobile Systems, LLC*, 2002 U.S. Dist. LEXIS 6308, *11 (N.D. Ill. 2002), *citing Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974); *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) (additional citations omitted). There is no such cause for concern here as Plaintiff has already demonstrated the failure of FCS's consent defense considering the complete lack of evidence indicating that Plaintiff ever provided his number to GMAC.

In *CE Design*, the 7th Circuit questioned the adequacy and typicality of a TCPA junk fax class representative because it felt that the record raised "serious doubts concerning the truthfulness of [his] testimony" regarding the voluntary provision of his fax number to a directory for publication, thus creating a "credibility problem." *Id* at 727. There are no such concerns about Plaintiff's credibility in this case that could present a defense unique to Plaintiff nor did Plaintiff voluntarily publish his telephone number.[4] *CE Design*, therefore, does not provide support for FCS's arguments here.

Nor does *Randall v. Rolls Royce*, 637 F.3d 818 (7th Cir. 2011) support FCS's position. In that case, the named Plaintiff's filed a discrimination action against Rolls Royce arguing that the base pay of female employees was less than that of male employees in the same employee categories. *Id* at 820. The *Randall* court held that the named Plaintiffs were not adequate class representatives to make such a claim because their base pay in fact exceeded that of the male employees in their

---

[4] Plaintiff's deposition testimony that he is not in it for the money but looking out for the class and his rejection of defendant's individual settlement offer of $90,000 while the class motion was pending sufficiently demonstrates Plaintiff's adequacy as a class representative. *See Exhibit 3 - Deposition of Plaintiff Vito Pesce at 8:8-16, 60:14-23.*

category for several years at issue, which made there claims regarding base pay "significantly weaker" than the claims of the other class members. *Id* at 823-24. Moreover, since the named plaintiff's base pay claims were weak, the court found that the named plaintiffs were too focused on their other claim, based on their failure to get promotions, to provide adequate representation of class members with base pay claims. *Id*. There are no such concerns in this case. As shown above, FCS's purported consent defense against Plaintiff is a loser and, in any case, applies to all class members. Plaintiff's claims are not "weak" in any sense; nor is Plaintiff pursuing any other claim not typical of the class that could distract him from providing adequate representation to all class members.

**IV.    The Class Definition is Not Overly Broad, But Can Be Amended if Necessary**

FCS also rehashes its argument that the class definition is overbroad because it only excludes persons for whom *defendant's records* show consent, rather than persons for whom *any records* show consent, thereby including persons who may have provided consent. First of all, it is simply not necessary that a class definition be drafted in such a way as to foreclose the possibility of any defenses against the class members. *See* Fed. R. Civ. P. 23(a)(3) (typicality is satisfied where the "claims or *defenses* of the representative parties are typical of the claims or *defenses* of the class.")(emphasis added); Fed. R. Civ. P. 23(c)(2)(class notice must clearly state "the class claims, issues, or *defenses*.")(emphasis added). The class definition's inclusion of persons who may be subject to a consent defense is therefore no reason to deny certification. *See Hinman v. M and M Rental Center* Inc., 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) ("by certifying a class of individuals who received unsolicited faxes, I am merely setting the boundaries of the class, not resolving the substantive issues.")("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.")

10

The class definition was nevertheless drafted, out of an abundance of caution, to weed out persons who had likely provided consent. The Court recognized as much in its order granting certification. Doc. 71 at p.3 ("The class includes only those persons who have been contacted on their cellular phone and *who have not consented* to the calls.")[5] FCS's argument here is not much more than a matter of semantics; whether the phrase "defendant's records" includes records that defendant obtains from others and submits to the court as evidence could be debated. Should the Court find any ambiguity, Plaintiff would not object to an amendment of the definition such that it reads:

> all persons within the State of Illinois who, on or after January 1, 2010, and on or before February 28, 2011, received a non-emergency telephone call from defendant to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *where defendant can produce no records* showing that the person provided the number to the defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).

This amendment would resolve FCS's concerns without substantively altering the class already certified by the Court.

**V.    Common Questions Predominate This Action**

Despite the Court's ruling that "individual questions do not predominate over questions common to the class" (Doc. 71 at p.3), FCS devotes 3 pages of its motion to rehashing the very same arguments it made about individual issues of consent in its original opposition to class certification. There is nothing new here; the Court should affirm its previous ruling.

---

[5] Furthermore, two courts in this district have certified a TCPA cell phone class with the exact same language referring to "defendant's records" in the class definitions. *See Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. January 5, 2011); *Mitchem v. Illinois Collection Service, Inc.*, 271 F.R.D. 617 (N.D. Ill 2011).

Working from its presumption that the class definition is overbroad, FCS argues (again) that "the class definition does not exclude people who provided their cell phone numbers to their creditors" and that the Court will therefore need to determine whether each class member consented to calls by providing their number to their creditor (Doc. 81 at p. 9). As noted by the court, "Defendant's objections go to whether a person is a member of the class in the first instance, not to the nature of the claim of properly identified class members." The class definition, as already approved by the court, excludes all persons as to whom "defendant's records... show that the person provided the number to the defendant or the original creditor." Doc. 71 at p.3. As shown above, to the extent that FCS is concerned here about the meaning of the phrase "defendant's records," an amendment of the class definition to exclude only those persons as to whom "defendant can produce no records showing that the person provided the number to defendant or the original creditor" will resolve this issue.

The class is narrowly tailored to weed out persons who likely provided consent, just as it was in *Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. January 5, 2011) and *Mitchem v. Illinois Collection Service, Inc.*, 271 F.R.D. 617 (N.D. Ill 2011), in which nearly identical TCPA cell phone classes were certified in this District. As recognized by this Court, any putative class member that FCS shows to have provided his or her number to the creditor is simply not a class member. The class "includes only those persons who have been contacted on their cellular phones and who *have not consented to the calls*." *Doc. 71 at p. 3*. Further, FCS admits that it can easily identify class members and resolve any issues of consent through the ministerial review of documents already in its possession. *See Doc. 36-7 - Declaration of Frank Russo at ¶ 7; Exhibit 2* at 111:9-14 (admitting that as of November 17, 2011 FCS's review of documents had produced

no evidence of consent for 2,981 of possible class members). In a recent appearance before

Magistrate Judge Denlow, FCS's counsel even claimed that FCS had been successful in its

ministerial review of documents relating to the identification of class members and consent:

> 7    THE COURT: So what are you finding so far? What's
> 8  the discovery showing?
> 9    MR. VLAHAKIS: We have a lot of --
> 10   THE COURT: Are you finding that they had approval,
> 11 didn't have approval?
> 12   MR. VLAHAKIS: Yes. My client has a lot of
> 13 contracts. The majority of their contracts are with gyms. We
> 14 have found that with the gym memberships people are placing
> 15 their own cell phone number down on the form because typically
> 16 the forms require it. Or somebody even puts down their number
> 17 as a residential number. We have found out that by looking at
> 18 that number that was actually a cell phone number that they had
> 19 self identified. We're having some success, but not as high of
> 20 success with the automobile contracts.
> 21    As you may recall, Mr. Pesce's was for a lease of a
> 22 Saab vehicle. He never provided on the original form his cell
> 23 phone number. We find some that do.

*See Exhibit 5 - Transcript of Proceedings at p.4.* As the Court held previously, no individual

issues of consent predominate this action and FCS's actions demonstrate that the class can be

identified administratively.

FCS also rehashes its argument that individual issues about the porting of numbers from

landline phone to cell phones will predominate this action, but (again) fails to provide any evidence

whatsoever that such porting took place with respect to any class member nor does it provide any

evidence of the rate at which such porting takes place in general. FCS even admitted in its 30(b)(6)

deposition that it has no evidence of porting:

> 16   Q.   All right. I know this paragraph is
> 17 is written based on your experience. But my
> 18 question is, does FCS have any evidence that a
> 19 call was placed to a land residential line,

13

20   that future calls to the same number may have
21   contacted a cell number?
22       A.   I'm reading the answer again to get
23   to your question, hold on.
24       MR. VLAHAKIS; what Keith is
25   saying, he understands your hypothetical. He's
                          126
1    asking are you, through FCS, aware of this
2    circumstance actually happening, with the
3    amount of numbers that we've identified.
4        THE WITNESS: No.

Further, FCS (again) fails to explain how it could possibly establish that such porting ever occurred

in any case.  There is no compelling reason to believe that this will be an issue at all, let alone one

that predominates the real issues in this case.  This is an entirely hypothetical issue and cannot defeat

certification. *G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 U.S. Dist. LEXIS 7084, *27 (N.D. Ill. 2011).

## VI.    Plaintiff has Standing to Represent the Class

Finally, FCS rehashes another argument rejected by the Court that Plaintiff cannot represent

a "skip-trace class because his number was not skip-traced."[6]  As an initial matter, the class certified

by the Court is much broader than a "skip-trace" only class.  As discussed above, FCS alleges that

it did not skip trace 96% of the phone numbers at issue in the class because it claims that those

numbers were provided to it by the underlying creditors, just as it claims that GMAC provided it

with Plaintiff's number. See *Doc.* 85 at p. 3.

The class is defined to include any person who did not "provide the number to the defendant

or the original creditor," regardless of how FCS obtained the number.  Plaintiff has standing to

---

[6] As discussed *supra*, Plaintiff's cell phone number most likely was skip traced by GMAC, because there is no other plausible explanation for its appearance in GMAC's records. The only thing FCS has been able to say about how GMAC obtained Plaintiff's number is to admit that there is no record that Plaintiff ever provided it.  As such, FCS has no basis to claim that the number was not skip traced.

represent the proposed class regardless of whether or not his number was skip traced because Defendant cannot show that Plaintiff "provided the number to Defendant or the original creditor." Plaintiff "possess[es] the same interest and suffer[ed] the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998). Plaintiff and all of the class members suffered the same injury (the receipt of unwanted automated telephone calls to their cellular telephones in violation of the TCPA) and further possess the same interest (obtaining statutory damages pursuant to the TCPA). As such, Plaintiff has standing to represent the class even if, contrary to FCS's own assertions, his is the only number that was not skip traced. *See id* at 594 (holding that the named plaintiff had standing to represent a class where he and all other class members received the same form letters regardless of differences in individual circumstances).

## VII.    Conclusion

FCS's arguments for reconsideration should be denied because FCS does not present a single argument that it did not already raise in its original opposition to class certification. Moreover, FCS's arguments are without merit. The existence of Plaintiff's cellular telephone number in GMAC's records cannot establish consent, but FCS is nevertheless free to make its ill fated consent argument against Plaintiff and every other member of the class. There is therefore no reason to find that Plaintiff is an inadequate class representative. The Court should affirm its ruling that no individual issues predominate this action and its certification of the class. Alternatively, the Court could merely correct the statement in its order of December 19, 2011 to read that there is no record *of consent* for plaintiff's telephone number in either defendant's or GMAC's records.

Respectfully submitted,
/s/ Timothy J. Sostrin

15

Keith J. Keogh
Craig Shapiro
Timothy Sostrin
KEOGH LAW, LTD.
101 N. Wacker, Dr., Ste. 605
Chicago, Il. 60606
312.726.1092/312.726.1093 (fax)
TSostrin@keoghlaw.com

## CERTIFICATE OF SERVICE

I certify that on February 16, 2012, I electronically filed the foregoing memorandum via the Court's CM/ECF system, which will perfect service upon the following:

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
jvlahakis@hinshawlaw.com

/s/ Timothy J. Sostrin

16