# EXCERPTED EXHIBIT 3

```
              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
VITO A. PESCE, on behalf    )
of himself and all          )
others similarly situated,  )
           Plaintiffs,      )
    vs.                     )  No. 11-cv-01379
FIRST CREDIT SERVICES,      )
INC. d/b/a ACCOUNTS         )
RECEIVABLE TECHNOLOGIES,    )
           Defendant.       )

      The deposition of VITO PESCE, called for
examination pursuant to the Rules of Civil
Procedure for the United States District Courts
pertaining to the taking of depositions, taken
before Shannon R. Roberts, a notary public
within and for the County of Will and State of
Illinois, at 222 North LaSalle Street,
Suite 300, Illinois, on July 25, 2011, at the
hour of 1:24 p.m.
Reported by:  Shannon R. Roberts, CSR
License No.:  084-004669
```

1

---

```
1              I N D E X
2  WITNESS              EXAMINATION
3  VITO PESCE
4    BY MR. VLAHAKIS            5
5    BY MR. KEOGH             54
6    FURTHER BY MR. VLAHAKIS       59
7
8
9
10            E X H I B I T S
11  NUMBER           MARKED FOR ID
12  PESCE Deposition Exhibit
13    No. 1           6
14    No. 2           8
15    No. 3           10
16    No. 4           19
17    No. 5           32
18    No. 6           49
19
20
21
22
23
24
```

3

---

```
1  APPEARANCES:
2    KEOGH LAW, LTD.
3    BY:  MR. KEITH J. KEOGH
4    101 North Wacker Drive
5    Suite 605
6    Chicago, Illinois  60606
7    (312) 780-7363
8        Representing the Plaintiffs;
9
10   HINSHAW & CULBERTSON, LLP
11   BY:  MR. JAMES C. VLAHAKIS
12   222 North LaSalle Street
13   Suite 300
14   Chicago, Illinois  60601
15   (312) 704-3000
16       Representing the Defendant.
17
18
19
20
21
22
23
24
```

2

---

```
1          (WHEREUPON, the witness was duly
2           sworn.)
3      MR. VLAHAKIS:  Could you state your full name
4  for the record, please.
5      THE WITNESS:  Vito Angelo Pesce.
6      MR. VLAHAKIS:  Mr. Pesce, have you ever given
7  a deposition before?
8      THE WITNESS:  Yes.
9      MR. VLAHAKIS:  What case was that involving?
10     THE WITNESS:  It was a traffic accident.
11     MR. VLAHAKIS:  So it was a pretty quick
12  deposition?
13     THE WITNESS:  Yes, very quick.
14     MR. VLAHAKIS:  I just want to lay down some
15  ground rules.  That's why I was asking.
16  Typically, we ask that you wait until I'm done
17  asking the question before you give your answer.
18  That allows the court reporter to take down
19  testimony a lot easier.
20        Do you understand that?
21     THE WITNESS:  Uh-huh.
22     MR. VLAHAKIS:  And we need to say yes or no
23  or verbal answers.
24     THE WITNESS:  Yes.
```

4

1 (Pages 1 to 4)

1    MR. VLAHAKIS: If you don't understand a
2  question because it's either long, confusing or
3  it sounds like legalese, let me know and I'll
4  try to rephrase the question so to make sure
5  that when I'm asking you something, you fully
6  understand it before you give an answer.
7        Are you okay with that?
8    THE WITNESS: Yes.
9    MR. VLAHAKIS: If you need to take a break to
10  go to the bathroom, let me know, we can do that.
11  If you need the court reporter to read back a
12  prior answer, she can do that.  If you want to
13  hear back my question, she can also do that.
14        Do you understand?
15    THE WITNESS: Yes.
16        VITO PESCE,
17  having been first duly sworn, was examined and
18  testified as follows:
19        EXAMINATION
20  BY MR. VLAHAKIS:
21    Q.  I would like to ask you a few quick
22  questions regarding some of the settlement
23  offers that have been made in this case.  I have
24  made a copy of these letters for you and for

5

1  your attorney.
2        This will be Exhibit 1.
3            (WHEREUPON, PESCE Deposition
4            Exhibit No. 1 was marked for
5            identification.)
6    THE WITNESS:  I would like to go to the
7  restroom before we start.
8    MR. VLAHAKIS:  If you want to go now, that's
9  fine.
10    MR. KEOGH:  Why don't you go now before he
11  asks you a question.
12    THE WITNESS:  Okay.
13            (WHEREUPON, a short break was
14            taken.)
15    MR. KEOGH:  I just want to state for the
16  record Exhibit 1 is a settlement letter.
17  Pursuant to Rule 408, any settlement discussions
18  is non-discoverable and won't lead to relevant
19  information.  With that general objection to any
20  questions regarding this, you can ask your
21  questions.
22    MR. VLAHAKIS:  Fair enough.  I agree with the
23  concept that these would be arguably
24  confidential.  The scope might be decided at a

6

1  later date under 408, but I have no intention to
2  having these published in the public record at
3  this time.
4        I'm just going to ask a very limited
5  amount of questions of you, Mr. Pesce.
6  BY MR. VLAHAKIS:
7    Q.  Mr. Pesce, have you seen this document
8  before today's deposition?
9    A.  Yes.
10    Q.  Do you recall when you saw it?
11    A.  I believe it was the same day it was
12  issued.
13    Q.  And how did you receive a copy of this
14  letter?
15    A.  Electronic.
16    Q.  And if you need time to refamiliarize
17  yourself with the document, you can go ahead and
18  review it and tell me when you're done looking
19  it over.
20    A.  I'm pretty familiar with it.
21    Q.  Okay.  In Paragraph 1 of this letter,
22  you see a statement regarding a confidential
23  payment to plaintiff.  Do you understand that
24  that payment amount that's identified there was

7

1  an offer that my client made to you to settle
2  your TCPA claims?
3    A.  I understand.
4    Q.  And am I correct that you rejected that
5  settlement overture that's contained in
6  Paragraph 1 of this July 18, 2011 letter?
7    A.  Yes.
8    Q.  Without revealing any attorney/client
9  privilege communications you had with your
10  attorney, could you explain to me why you
11  rejected the settlement figure that's identified
12  in Paragraph 1 of the July 18, 2011 letter?
13    A.  Well, it's a class case.  It's not
14  about me individually.
15    Q.  Anything else other than that?
16    A.  That's pretty much it.
17    Q.  I'd like to show you copies of an
18  exhibit marked as 2.
19            (WHEREUPON, PESCE Deposition
20            Exhibit No. 2 was marked for
21            identification.)
22    MR. KEOGH:  For the record Exhibit 2 is also
23  a settlement letter and I will object pursuant
24  to 408.  I don't think it's relevant -- related

8

2 (Pages 5 to 8)

1 answer today to the various questions I asked
2 you where it seemed like your answer was you
3 don't recall?
4     A.   Just maybe being a little more cautious
5 in my answering.
6     Q.   Did you review your notes in
7 preparation for today's deposition?
8     A.   I did.
9     Q.   Did you bring them with you at all?
10    A.   No, I did not.
11    Q.   But your attorney does have copies of
12 them?
13    A.   Yes.
14    Q.   Is your more accurate answer today that
15 you don't recall or do you believe that your
16 answer in Paragraph 13 that you never provided
17 your cell phone number is the more accurate
18 answer?
19    A.   I believe I never provided my cell
20 phone number.
21    Q.   Did you specifically review your notes
22 today to determine whether or not there's a
23 mention in your notes regarding your cell phone?
24    A.   I did not review my notes today.

53

1     A.   Correct.
2     Q.   And you understand the power of an auto
3 dialer or preemptive dialer and how often they
4 can reach a person?
5     A.   Correct.
6     Q.   Now, counsel showed you a collection of
7 notes from his client as Exhibit 3.  Can you
8 grab those, please?  Can you turn to the second
9 page?  He asked you a variety of questions
10 regarding the -- a March 9 and March 16 entry,
11 correct?
12    A.   Correct.
13    Q.   And I believe you testified you weren't
14 sure about the dates, but you did speak to them
15 a couple times, correct?
16    A.   Correct.
17    Q.   One, a Lisa Henry at least once; is
18 that correct?
19    A.   Correct.
20    Q.   Now, putting aside the dates, take a
21 look at the March 9 entry.  Is it true that
22 you're asking for written verification of the
23 debt?
24    A.   Yes.

55

1     MR. VLAHAKIS:  I think I'm almost done, but
2 there's one document I want to look at that
3 I didn't bring down.
4        If we can take five minutes?
5     MR. KEOGH:  Sure.
6        (WHEREUPON, a short break was
7        taken.)
8     MR. VLAHAKIS:  I'm done.  Go ahead.
9         EXAMINATION
10 BY MR. KEOGH:
11    Q.   Mr. Pesce, counsel asked you what you
12 do for a living.  You said IT management.  Can
13 you elaborate, please?
14    A.   Data center management, telephony
15 oversight, databases, software.
16    Q.   For what company?
17    A.   CNA Insurance.
18    Q.   And as part of that oversight for
19 database management and telephony, do you have
20 any experience dealing with preemptive dialers
21 or auto dialers?
22    A.   I'm familiar with them.
23    Q.   You're familiar with them as part of
24 your employment?

54

1     Q.   Is there any mention of you asking them
2 to call back your cell phone?
3     A.   No.
4     Q.   What are you asking for according to
5 these notes?
6     A.   I wanted the physical proof that I owed
7 the debt.
8     Q.   Would a call back been good enough for
9 you?
10    A.   No.
11    Q.   According to these notes, you called
12 back again on March 16; is that correct?
13    A.   Correct.
14    Q.   And it's correct not as to the date,
15 but as to the fact that you did call back?
16    A.   Yes.
17    Q.   And, once again, what did you ask for
18 on that second call?
19    A.   Documents proving that I owed the debt.
20    Q.   And if they called you back saying we
21 checked, you owed a debt, would that have been
22 good enough?
23    A.   No, it would not.
24    Q.   Is there any reason at this point for

56

14 (Pages 53 to 56)

1  you to provide Fair [sic] Credit Services your
2  cell phone number?
3      A.  No.
4      Q.  And did you provide Fair [sic] Credit
5  Services your cell phone number?
6      MR. VLAHAKIS:  Objection, asked and answered.
7      THE WITNESS:  No.  They obviously had it if
8  you look at the notes.
9  BY MR. KEOGH:
10     Q.  And you said they obviously had it.  If
11 you turn to the first page of Exhibit 3, it
12 shows a phone call to (847) 809-9705; is that
13 correct?
14     A.  Yes.
15     Q.  And that's -- there's a date of
16 March 3; is that correct, on that circled entry
17 showing the call?
18     A.  March 1.
19     Q.  Sorry.  Thank you.
20        In that group exhibit, which I believe
21 is Exhibit 5, counsel asked you to look at two
22 letters that you wrote Nuvell; do you recall
23 those questions?
24     A.  Yes.

57

1      Q.  I'm going to hand you those two letters
2  dated March 1, 2010, and March 17, 2010.  Would
3  you take a second to look at those documents?
4      A.  Okay.
5      Q.  Now, what are those documents
6  requesting?
7      A.  Proof.
8      Q.  Proof of what?
9      A.  Proof that I owed the debt.
10     Q.  And you're asking Nuvell to send you
11 proof, correct?
12     A.  Correct.
13     Q.  Did you provide any phone numbers on
14 those letters?
15     A.  No, I did not.
16     Q.  Why not?
17     A.  Well, I wanted hard-copy proof, and
18 I don't just give out my cell phone willy-nilly.
19 But I basically wanted hard-copy proof that
20 I owed this debt and that Nuvell -- I never
21 heard of Nuvell.  I don't even know who that
22 company is.  Even today they're supposedly not
23 even a company anymore, so I still don't know
24 who Nuvell is.  I never paid Nuvell.  I always

58

1  paid Saab Financial.  So I wanted hard-copy
2  proof that I owed the debt and you owned the
3  debt.
4      Q.  You said you don't give out your cell
5  phone willy-nilly.  What do you mean by that?
6      A.  I'm cautious on it.  It's even on the
7  Federal Do-not-call list.
8      Q.  I believe you testified that you
9  reviewed the complaint in this case before it
10 was filed, correct?
11     A.  Correct.
12     Q.  Did you have access to your notes when
13 you were reviewing this complaint?
14     A.  Yes.
15     MR. KEOGH:  I have no further questions for
16 the witness.
17        FURTHER EXAMINATION
18 BY MR. VLAHAKIS:
19     Q.  Mr. Pesce, do you have an understanding
20 of what the -- the amount of statutory damages
21 that the TCPA provides for each call to a cell
22 phone in violation of the TCPA?
23     MR. KEOGH:  Objection, outside the scope of
24 cross.  You can answer.

59

1      THE WITNESS:  I believe I seen some numbers,
2  but not --
3  BY MR. VLAHAKIS:
4      Q.  Do you recall what number those may
5  have been?
6      A.  I don't recall.
7      Q.  Does $500 per violation ring a bell?
8      A.  That could be.
9      Q.  Do you have any understanding as to
10 whether damages can be trebled under the TCPA to
11 $1500 per call?
12     A.  I'm not a hundred percent familiar with
13 the law.
14     Q.  If you have an understanding that the
15 TCPA can award $500 per call, do you have an
16 understanding of what your maximum recovery
17 could be at the end of the case based on the
18 amount of calls to your cell phone?
19     A.  Generally.
20     Q.  What's your general understanding?
21     A.  Anywhere between -- I don't even know.
22 Again, I said it's not about me.  I don't care
23 about what numbers I get individually.
24     Q.  So is it your understanding in terms of

60

15 (Pages 57 to 60)

**Page 61**

1  math that if you had three phone calls, the
2  minimum recovery you could get would be 500 per
3  call or $1500?
4      A.   Yeah.
5      Q.   Is that a yes?
6      A.   Sure, if that's how the law reads.
7      Q.   And then at the maximum recovery at
8  $1500 per call, the most you could receive would
9  be $4500 for three calls?  Is that a yes?
10     A.   Yeah, if that's how the math reads.
11  MR. VLAHAKIS:  I'm done.
12  MR. KEOGH:  We'll reserve signature.
13     (FURTHER DEPONENT SAITH NAUGHT.)
14          (Proceedings concluded at
15              2:58 p.m.)

**Page 62**

1          IN THE UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF ILLINOIS
3                  EASTERN DIVISION
4
5  VITO A. PESCE, on behalf   )
   of himself and all others )
6  similarly situated,        )
            Plaintiffs,  )
7      vs.             ) NO. 11-cv-01379
   FIRST CREDIT SERVICES, INC.)
8  d/b/a ACCOUNTS RECEIVABLE  )
   TECHNOLOGIES,              )
9          Defendant.    )
10     This is to certify that I have read the
11  transcript of my deposition taken in the
12  above-entitled cause by Shannon R. Roberts,
13  Certified Shorthand Reporter, on July 25, 2011,
14  and that the foregoing transcript accurately
15  states the questions asked and the answers given
16  by me as they now appear.
17
18  _____
19       VITO PESCE
20  SUBSCRIBED AND SWORN TO
21  before me this _____ day
22  of _____ 2011.
23  _____
24  Notary Public

**Page 63**

1  STATE OF ILLINOIS   )
2             ) SS:
3  COUNTY OF W I L L   )
4    I, Shannon R. Roberts, a notary public within
5  and for the County of Will and State of
6  Illinois, do hereby certify that heretofore,
7  to-wit, on July 25, 2011, personally appeared
8  before me, at 222 North LaSalle Street,
9  Suite 300, Chicago, Illinois, VITO PESCE, in a
10  cause now pending and undetermined in the
11  Circuit Court of Cook County, Illinois, wherein
12  VITO A. PESCE, on behalf of himself and all
13  others similarly situated are the Plaintiffs,
14  and FIRST CREDIT SERVICES, INC. d/b/a ACCOUNTS
15  RECEIVABLE TECHNOLOGIES is the Defendant.
16    I further certify that the said witness was
17  first duly sworn to testify the truth, the whole
18  truth and nothing but the truth in the cause
19  aforesaid; that the testimony then given by said
20  witness was reported stenographically by me in
21  the presence of the said witness, and afterwards
22  reduced to typewriting by Computer-Aided
23  Transcription, and the foregoing is a true and
24  correct transcript of the testimony so given by

**Page 64**

1  said witness as aforesaid.
2    I further certify that the signature to the
3  foregoing deposition was reserved by counsel for
4  the respective parties.
5    I further certify that the taking of this
6  deposition was pursuant to Notice, and that
7  there were present at the deposition the
8  attorneys hereinbefore mentioned.
9    I further certify that I am not counsel for
10  nor in any way related to the parties to this
11  suit, nor am I in any way interested in the
12  outcome thereof.
13    IN TESTIMONY WHEREOF:  I have hereunto set my
14  hand and affixed my notarial seal this 8th day
15  of August, 2011.

_____
21  NOTARY PUBLIC, WILL COUNTY, ILLINOIS

McCorkle Court Reporters, Inc.
Chicago, Illinois   (312) 263-0052