**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated | ) ) ) | 11-cv-1379 |
| Plaintiff | ) ) | |
| v. | ) ) | Judge Robert W. Gettleman |
| FIRST CREDIT SERVICES, INC. | ) ) | Magistrate Judge Morton Denlow |
| Defendant. | ) ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO RECONSIDER ORDER**
**GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant, FIRST CREDIT SERVICES, INC. ("FCS"), submits this Reply in Support of

its Motion to Reconsider the Court's Order granting Plaintiff's Motion For Class Certification:

**I.      Introduction**

Plaintiff claims that FCS violated the TCPA by calling his cell phone without his consent.

Although paragraph 14 of the Amended Complaint alleges that "Plaintiff did not provide his

current cellular telephone at the time he incurred this debt, and he never provided the number to

any subsequent creditor or defendant," when Plaintiff was asked s series of questions in his

deposition if he had provided his creditor with his number, he conveniently testified, "I don't

know" several *dozen* times.   Although Plaintiff belatedly concedes that his cell phone number

appears in his creditor's records, he happily contends that GMAC's records do not *expressly*

document that he gave permission to be called on his cell phone.   What Plaintiff is really is

saying that the records produced to date do not catch him in a lie.

Indeed, the record before this Court now clearly demonstrates that Plaintiff *provided his*

*cell phone to his creditor on February 29, 2008.*   As a supplement to GMAC's response to

FCS's subpoena, GMAC has provided a document which clearly demonstrates that Mr. Pesce's

original home number was changed to his cell phone ending in 9705. *See* **Exhibit** A, GMAC

Declaration, ¶¶ 8-10 and document entitled "Global Account Comments Services" (attached to

GMAC's declaration as Exhibit 1). As discussed below, Plaintiff provided his cell phone to

GMAC on February 29, 2008, because he stopped using his home number that he had originally

listed on his original loan application sometime around August of 2007. Conveniently, Plaintiff

failed to recall this fact at his deposition – maybe cause he realized that GMAC's response to

FCS's subpoena did not contain a "smoking gun" that undermined his cause of action.[1]

Given the fact that GMAC declaration's and the "Global Account Comments Services"

document proves that Plaintiff consented to being called on his cell phone, the class should be

decertified on the basis that Plaintiff lacks standing to represent a class of persons who were

called without their consent.[2] It is axiomatic that a plaintiff seeking class certification must

---

[1]     This document was produced as a supplemental response to FCS's May 2, 2011 subpoena which asked GMAC for any evidence documenting Plaintiff's consent to being called on his cell phone. *See* Dkt. 62, pp. 2-5. GMAC/Ally's counsel stated the following when he forwarded the document in question:

> Attached please find a document entitled "Global Account Comments Services" which details a change made to the phone number related to Mr. Pe[s]ce's account. This should supplement items 3 and 4 from your subpoena.
>
> As I informed you, the account system utilized in connection with Mr. Pe[s]ce's account – the Llama system – underwent a conversion in 2010. This document reflects when the Llama system recorded a change to Mr. Pe[s]ce's phone number (2/29/08), when the information contained in the Llama system was converted into the new Debt Manager system (1/15/10), and the details concerning that change. This document reflects the fact that on February 29, 2008, the home phone number for Mr. Pe[s]ce's account changed from 847-[redacted]-2797 to 847-[redacted]-9705. This is consistent with the records previously produced which indicate that the account holder contacted Saab Financial Services (which later merged into Nuvell Credit Company) on February 29, 2008.

*See* **Exhibit B** (2/24/2012 email).

[2]     To the extent Plaintiff wishes to dispute the authenticity of the Exhibit 1 to the GMAC declaration, GMAC's counsel has indicated that he is in the process of obtaining a declaration to demonstrate and verify that the attached document is an admissible business record. The custodian of the record who will testify regarding the document in question is currently out of the office.

establish standing to bring the suit by showing that he or she is a member of the proposed class. *Keele v. Wexler,* 149 F.3d 589, 592-93 (7th Cir. 1998). A plaintiff must suffer the particular injury shared by all members of the class. *Id. See also, McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("plaintiffs lack standing to seek - and the district court therefore lacks authority to grant - relief that benefits third parties.").

Alternatively, should Plaintiff try to argue that the "Global Account Comments Services" document does not demonstrate his consent, the class should still be decertified because Plaintiff's acute lack of credibility precludes him from being an adequate class representative.

Finally, the class should also be decertified because the extended debate over whether Plaintiff consented demonstrates that typicality and commonalty are lacking and that a class action is not a superior method for litigating this TCPA claim.

Decertifying the class in light of these circumstances is consistent with FRCP 23(c)(1)(C) which provides that "[a]n order that grants . . . class certification may be altered or amended before judgment." It also is consistent with FRCP 1 which provides that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

## II.    Summary of Facts

Plaintiff identified a home (847-XXX-2297) and work (312-XXX-1331) numbers on his credit application. **Dkt. 62**, p. 12. GMAC's records and the placement records sent to FCS identify his home number as 847-XXX-9705. **Dkt. 62**, p. 16; Dkt. 36-7, p. 6, Russo declaration ¶ 23 and Exhibit D to Russo declaration. Plaintiff incorrectly suggests that "[t]he only plausible explanation for the appearance of Plaintiff's telephone number in GMAC's records is that GMAC used a so called 'skip tracing' service to obtain Plaintiff's cellular telephone number

3

before transferring the account to FCS." **Dkt. 91**, p. 5. This speculation is not supported by anything in the record. In fact, GMAC did not perform obtain Plaintiff's cell phone from a skip-trace or via call capture technology.[3] *See* **Exhibit A,** GMAC declaration, ¶¶ 4-5.[4] Plaintiff's unsupported argument appears to violate of FRCP 11(b)(1), (3) and (4).

Of course, the reason GMAC did not need to skip trace Plaintiff because Plaintiff provided his cell phone to GMAC on February 29, 2008, when he contacted GMAC's representative to discuss an early pay off of the auto loan. **Exhibit A,** GMAC declaration, ¶¶ 8-10. GMAC's records also reflect that the caller verified all personal information ("cci cid home vap"). *Id*. at ¶¶ 6, 9 and Exhibit 2 to GMAC declaration. *See also,* GMAC screen capture of the 2/29/08 telephone call is located at Dkt. 36-4, p. 3. At the time of this call, Plaintiff no longer maintained his original home number.[5] GMAC's records reflect that the caller asked for an early termination payoff ("cs cald to get early term"). GMAC declaration, ¶ 8. Plaintiff provided his cell phone as a new contact number because he longer had a home number in February of 2008. *See* Footnote 5.

In summary, the record demonstrates: (a) Plaintiff originally provided his home number (847-XXX-2297) as a contact number; (b) GMAC did not skip-trace Plaintiff's cell phone; (c) GMAC did not call-capture Plaintiff's cell phone; (d) Plaintiff got rid of this home number in August of 2007; (e) GMAC's records reflect that Plaintiff provided GMAC with his cell phone

---

[3] Previously, FCS's corporate representative testified that he is familiar with GMAC's records and testified that no skip (or call capture) was performed. **Dkt**. 36-7, p. 6, Russ declaration ¶¶ 26-27.

[4] Counsel for GMAC has indicated that a signed copy of the declaration will be transmitted to counsel for FCS on Monday, February 27, 2012.

[5] While Plaintiff's wife testified she could not recall when they no longer had a home number (*see* **Exhibit C**, Laura Pesce Dep. at p. 29, line 18 to p. 30, line 7), the person who inherited the Pesce's home

(847-XXX-9705) on February 29, 2008; and (f) GMAC provided this number to FCS.   Against these facts, there can be no reason to dispute that Plaintiff provided his cell phone to GMAC, and for this reason, FCS had consent to call Plaintiff.

## III.   Argument

### A.   Because Plaintiff's Claim Is Subject to a Unique Consent Defense, Rule 23's Requirements of Typicality and Adequacy Are Not Met.

A class may not be certified unless the proposed class representative "will fairly and adequately protect the interests of the class." Fed.  R. Civ. P. 23(a)(4). When the claims of the class representative  are "significantly weaker than those of some (perhaps many) other class members," the named plaintiff is not an adequate class representative under Federal Rule 23(a)(4).  *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011) (named plaintiffs were not adequate representatives because their claims were weaker than claims of some class members).  "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer."  *CE Design Ltd.,* 637 F. 3d at 726.  FCS need only establish "an arguable defense" to the named plaintiff's claim to defeat adequacy under Rule 23(a)(4).  *Wooley v. Jackson Hewitt, Inc.*, 2011 WL 1559330, *9 (N.D. Ill. Apr. 25, 2011).

The class representative's claim meets the typicality requirement of Rule 23(a) if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the representative's] claims are based on the same legal theory." *Oshana*

---

number has testified that she received the Pesce's former number in August of 2007.  *See* **Exhibit D** (Declaration of Judith Gargas).

130288867v2 0922494

*v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006). The typicality requirement ensures that the class representative's claims "have the same essential characteristics as the claims of the class at large." *Id*. *See also, Landsman & Funk, P.C. v. Lorman Business Center, Inc*., 2009 WL 602019, *7 (W.D. Wis. 2009). Even "an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class [and] bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd.,* 637 F. 3d at 726.

When a consumer gives his cell phone number to a creditor in connection with an existing debt, the consumer consents to receive auto-dialed calls from the creditor's debt collector at the number so provided. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10 ("2007 Order"). In *Cunningham v. Credit Mgmt. L.P.,* 2010 WL 3791104 (N.D. Tex. 2010), the court treated the creditor's possession of the consumer's cell phone number as evidence that the consumer consented to receive debt collector's auto-dialed calls. Here, the evidence demonstrates that a jury will find that Plaintiff released his number to his creditor and thereby consented to receive FCS's calls.

Because the record shows that Plaintiff has no viable TCPA claim, Plaintiff is not an adequate class representative. As such, his non-existent TCPA claim means that his claim is not typical of the class he seeks to represent. *See, e.g., Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011); *CE Design Ltd.,* 637 F. 3d at 726.

Even if the February 29, 2008 update didn't rule out certification, Plaintiff would still be unable to establish typicality and commonality. While Plaintiff contends that 96% of class members' phone numbers appear in the creditors' records (Dkt. at p. 8), he must put show that the class members' claims rise or fall based on *the same evidence as his claim.* The class, however,

6

is *not* limited to people who were contacted at phone numbers that the creditors supplied to FCS. The class instead includes debtors who were contacted on cell phone numbers that FCS obtained from skip tracers, from credit reporting agencies, or through call capture. FCS did not use any of these methods to contact Plaintiff. Because Plaintiff is subject to a consent defense that may not apply to class members whose numbers were obtained from sources other than creditors, typicality is lacking.

*Mitchem v. Illinois Collection Serv., Inc.,* 2010 WL 3003990, *4 (N.D. Ill. July 29, 2010), is precisely on point. *Mitchem* found that the claim of the named plaintiff in a TCPA action *was not typical of the claims of the class members* because the defendant obtained the plaintiff's phone number from his creditor, but the class included people who had been called at numbers that the defendant obtained from sources other than the creditor. Due to the absence of typicality, the court denied the motion for class certification.

Likewise, *CE Design Ltd.*, reversed the district court's certification of a class in a fax blast case because named plaintiff was subject to a consent defense (based on his releasing his number to a directory) that might not apply to some class members). 637 F. 3d at 724-725. *See also, Wooley*, 2011 WL 1559330, at *9 (named plaintiff was inadequate due to clean-hands defense that might not apply to other class members). Because plaintiff here is "subject to a defense" and "other class members may not be subject to the same defense," the named plaintiff is not an adequate class representative and the Court should deny the motion for class certification.

### B. Alternatively, Plaintiff's Lack of Credibility Renders Him and Inadequate Representative

Alternatively, this class should be decertified because Plaintiff's credibility renders him an inadequate class representative. As demonstrated below, Plaintiff's testimony that he did not

130288867v2 0922494

provide his cell phone number to GMAC is not credible. A named plaintiff who has credibility problems or who is likely to devote too much attention to rebutting an individual defense is not an adequate class representative *CE Design Ltd.,* 637 F. 3d at 725. Plaintiff "cannot be an adequate representative of the class of unconsenting recipients of [FCS's calls] if [he] is subject to a defense that couldn't be sustained against other class members. *Id.* Plaintiff cannot be an adequate representative if he "is not credible on the key question of whether [he] invited or permitted the [calls] about which it now complains. (If it did, its claim fails.)" *Id.*

Regardless of the merits of the claims of any putative class member, "[t]he only question [to] consider is whether . . . the claim of the class representative may be subject to a defense (that of consent to be faxed ads) that makes it an inappropriate representative of the class because other class members may not be subject to the same defense, or perhaps to any defense." *CE Design Ltd.,* 637 F. 3d at 725. "A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Id.* at 726. In noting that "the credibility problem and the consent defense are vital in assessing CE Design's adequacy as a class representative," the Seventh Circuit remanded the case for the district court to "reconsider its ruling that the named plaintiff is a proper class representative." *Id.* at 727-28. The same is true here.

In addition to *CE Design* (which involved a TCPA junk fax claim), many courts have denied or decertified a case in the face of a class representative's credibility issues. For example, in *Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 1337684, *4 (N.D.Ill. Mar.31, 2010) the court recognized that "[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could

reduce the likelihood of prevailing on the class claims.' " (citation omitted)). In decertifying the class the district court held:

> The nature of Defendants' newly proffered evidence regarding our interlocutory decision to certify the Bad Check List class presents a unique set of circumstances in which the court finds reconsideration of our prior opinion is appropriate
>
> * * *
>
> Searcy's credibility issues likewise affect her ability to adequately represent the interests of that class. Should the action proceed to trial, Defendants could present evidence of Searcy's misleading statement in related proceedings before the factfinder, thus exposing class members to negative consequences from Searcy's individual conduct

*Id.* at *4-*5. In *Kaplan v. Pomerantz*, 132 F.R.D. 504 (N.D. Ill. 1990) stated that "[w]hen the transcript is read in light of the facts as they are now known to be, it reflects a deliberate attempt to conceal information. *Id.* at 510. The court concluded that "[i]n light of these instances of false deposition testimony, the Court cannot in good conscience allow this case to continue as a class action with plaintiff serving as the class representative." *See also*, *Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir.1983) (court's preliminary conclusion that plaintiff's deposition testimony was erroneous warranted denial of class certification even if testimony was product of innocent mistake); *Darvin v. International Harvester,* 610 F.Supp. 255, 257 (S.D.N.Y.1985) (credibility problems apparent from plaintiff's deposition rendered him inappropriate as class representative); *Cohen v. Laiti,* 98 F.R.D. 581, 584 (E.D.N.Y.1983) (class certification denied because plaintiff's deposition rendered his credibility subject to attack).

While the newly acquired evidence of consent should put an end to this case, the record should reflect that Plaintiff's Response Brief misleads this Court in terms of how he testified during, his deposition. Plaintiff highlighted only a portion of his testimony. In contrast to paragraph 14 of the Amended Complaint alleges that "Plaintiff *did not* provide his current cellular telephone at the time he incurred this debt, and he never provided the number to any subsequent creditor or defendant" (emphasis supplied), Plaintiff repeatedly testified at his

130288867v2 0922494

deposition that *he did not recall* whether he gave his phone number to his creditor. When Plaintiff was asked "[d]o you ever recall providing your cell phone number to Saab Financial Services at any time while you had the vehicle in your possession?", he answered "I don't recall." When he was asked "[i]s it possible that you could have?", he answered "I don't know." When he was asked "[d]o you believe it's possible that you may have provided your cell phone number to Nuvell when you were calling them to discuss the disputed loan?", he again answered "I don't know." *See* Vito Pesce Dep. at 48:15-49:10, attached as **Exhibit E**.

Significantly, when Plaintiff was asked "[w]hen you spoke with somebody from Nuvell [the servicer of his auto lease], did they ever ask you to confirm telephone numbers that you could be reached at?", he answered the familiar mantra of "I don't recall." *Id*. at p. 41, lines 20-23. When the same question was posed as to Saab Leasing, the originator of the loan, he answered "I don't recall." *Id*. at p. 42, lines 4-13. Plaintiff was also asked "did you speak with somebody from Saab [Leasing] and tell them that they could call you back on your cell phone?", he answered "I don't recall." *Id*. lines 14-19. When Plaintiff was asked "[d]id you ever have any occasion to tell some employee of GMAC that they could contact you on your cell phone number?", he answered, "I don't recall." *Id*. at lines 20-23. Finally, when Plaintiff was asked wither he "ever had an occasion where you told somebody from Nuvell that they could contact you on your cell phone?" he answered "I don't recall clearly." *Id*. p. 42, line 24 to p. 43, line 4.

Against this backdrop and the newly obtained evidence, how will Plaintiff testify at trial? Will he continue claim that he does not "recall" even contacting his creditor to obtain a quote for an early lease termination? Or will he dispute legitimacy of GMAC's recently produced record and claim that some unknown person updated his contact information without his consent? Or will he go for a Hail Mary and hope that juries accustomed to modern day police crime shows

130288867v2 0922494

will expect Defendant to produce a voice recording and a voice analysis to document Plaintiff's consent?  The more likely answer is that jury will find Plaintiff's testimony incredible and conclude that the only reason he repeatedly testified "I don't recall" was *because he knew that the documents produced as of the date of his deposition* did not torpedo his case.  Put another way, at the time of his deposition, Plaintiff and his attorney gambled and hoped that he would overcome the issue of standing and serve as a class representative.  Plaintiff cannot be surprised by GMAC's disclosure of the "Global Account Comments Services" document.  Plaintiff simply failed to put any stock in FCS's corporate representative's prophetic testimony that FCS would find evidence that Plaintiff consented to being called:

A.    Mr. Pesce, absolutely, gave his cell number to our client, without a doubt.

Q.    All right. What are you basing that on?

A.    Lots of things. Number one, our client GMAC never did, based on the discovery, the information that was looked at, they never did any call capture to get that cell phone number.  There is no evidence at all indicating that our client, GMAC, did any skip tracing to obtain that cell phone number. On top of that, it is common procedure for creditors, not just our clients, but for creditors across the country, that when a customer calls in or they contact somebody, it is very customary that they will first seek to update contact addresses, information from that customer.

* * *

Q.    Okay. Is that it?

A.    So I'm going to say it one more time, I want an exclamation mark on this one. Mr. Pesce gave the cell phone number with consent, exclamation mark.

Q.    Well, if it is only that simple we wouldn't be here, would we?

A.    I think it is that simple.

* **

24      Q.    There is no record of GMAC verifying how the information from Mr. Pesce, that he gave the 9705 information, is there?

A.    There is no indication of it right now.  But I can tell you this investigation to get that is not over, my friends.

Q.    All right.  Well we'll deal with it if it comes up later.  Just let's just deal with it what we have now?

A.    Right it is not over.

* **

13        Q.    Are there any notations or any documents from GMAC showing that Mr. Pesce provided that 9705 number?

A.    I did not see that.

Q.    So it seems to me that your exclamation point, to give it, is all based upon your belief that they had to get it from somewhere and it probably happened; am I wrong?

A.    It is there, Keith and we'll find it.

Q.    You are saying find it.  Meaning you don't have it right now; correct?

A.    We don't have it right now.  But I can assure you we will find it.

* * *

Q:   Based upon your experience with GMAC documents, do you believe that production is incomplete?

A:  Do I believe that what they g[a]ve us was complete?

Q:  Yes?

A:  No. I think there are move avenues to explore.

**Exhibit F**, FRCP 30(b)(6) deposition, p. 130, line 2 to page 131, line 18; p. 131 line 24 to page 133, line 1, p. 133, line 25 to page 134, line 7.[6]

Consistent with FRCP 1 and FRCP 23(c)(1)(C), the Court does not need to defer the weighing of Plaintiff's glaring and disturbing credibility issues.  Instead, Plaintiff's complete

---

[6] Should Plaintiff's counsel attempt to argue that it is too late for FCS to produce this document, the undersigned counsel states, that as an officer of this court, that he repeatedly and diligently communicated in with GMAC and its attorneys in an attempt locate a document in the form of the "Global Account Comments Services."  Counsel did not learn of its existence until after he, filed a motion to extend the due date of this Reply.

130288867v2 0922494

lack of credibility and candor supports the decertification of the present class action. Plaintiff may attempt dispute whether he provided his number on February 29, 2008. Even if he can do so consistent with Rule 11, the inescapable conclusion is that the evidence against Plaintiff on this issue undermines his credibility to such an extent that a trial on the merits will clearly affect his ability to adequately represent the interests of that class. Should the action proceed to trial, Defendants will present evidence of Plaintiff's misleading statements in related proceedings before the factfinder, thus exposing class members to negative consequences from his individual conduct. For these reasons, the class should be decertified.

### C. Because Plaintiff's Claim Is Subject to a Unique Consent Defense, Rule 23's Requirements of Typicality and Adequacy Are Not Met.

Additionally, this Court should decertify the class because the fact-intensive nature of whether Plaintiff consented proves that similar battles will need to be addressed by this Court. This is true given the reality the other class members will undoubtedly be subject to similar fact-intensive disputes. "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 369 (N.D.Ill.2008). The identification of class members is not a simple "ministerial task", as Plaintiff has repeated argued (dkt. 51 at pp. 7, 8 and 11 and dkt. 91, p. 13) and this Court apparently accepted. FCS has never suggested that the identification of class would be ministerial in nature. Rather, the current battle clearly demonstrates individualized issues of consent exist and *predominate* over common questions.

While it might be a ministerial task to *identify* *potential* class members by confirming whether FCS (a) obtained telephone numbers from its creditors or (b) obtained the numbers from a skip-trace service, the above argument demonstrates that analysis of consent is entirely

13

different issue.  For both skip traced persons[7] and persons whose numbers were obtained from creditors, the parties and the Court must undertake individual inquiries as to whether the number was provided to the creditor *by each particular class member*.  As FCS pointed out in opposing class certification, the parties must undertake individualized assessment of contracts, payment histories, account updates, dispute letters and arbitration agreements in order to determine whether consent exists.  *See* **Exhibit F**, 30(b)(6) dep., page 141, lines 23 thru page 148, line 13

Plaintiff has improperly suggested on two occasions that the only issue was to identify the source of the number and claimed that FCS skip-traced 238 class members and that no consent existed.  Dkt. 51, pp. 6, 11.  Without any support, Plaintiff speculated that "[t]he final number of class members [obtained from creditor records] will be readily determined by similar administrative review."  Dkt. 51, at p. 6.   There is no support for this argument – and it has been effectively trounced by the fact intensive nature of whether Mr. Pesce provided consent.[8]

Given the time and judicial resources that will be spent litigating these issues this Court should reconsider its Order and hold that individualized determinations of consent for the class members will predominate over common issues of fact, contrary to the requirement of FRCP 23(b)(2) and (3).  This Court should also decertify on the basis that the fact-intensive inquiry that has applied to Plaintiff will also apply to the class, which demonstrates that a class action is not a superior method to litigate this TCPA claim.

---

[7]     It should be emphasized that Plaintiff was never skip traced.

[8]     Even where numbers were skip traced, FCS's 30(b)(6) deponent testified that its *preliminary* review of the debtor/creditor contracts found that a majority of the skip-traced debtors had provided

## V.    Conclusion

Just as FCS has consistently argued, Plaintiff's creditor obtained Plaintiff's cell phone number *when Plaintiff updated his contact information*.   The class, however, is not limited to individuals whose creditors were in possession of their cell phone numbers. As a result, Plaintiff's claim is not typical of the claims of the class members, and he is not an adequate class representative. Plaintiff's claim is weaker than the claims of the class members given the overwhelming evidence of consent.

Reconsideration is also merited for purely legal reasons. First, the class definition should account for evidence in the possession of the creditors, but it does not. Second, individual issues concerning consent predominate over common issues. There is no classwide evidence that resolves for all class members whether they consented to be contacted on their cell phones.

WHEREFORE, for the reasons set forth above, Defendant FIRST CREDIT SERVICES, INC. respectfully requests that this Honorable Court reconsider and vacate its order certifying the class.

By: /s/ James C. Vlahakis

James C. Vlahakis
One of the Attorneys for Defendant
FIRST    CREDIT    SERVICES,    INC.    dba
ACCOUNTS RECEIVABLE TECHNOLOGIES

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
Phone No:  (312) 704-3000
Fax No:  (312) 704-3001
dschutlz@hinshawlaw.com
jvlahakis@hinshawlaw.com

---

consent.  Exhibit F, FCS's 30(b)(6) deposition, p. 135, line 14 thru p. 149, line 2  Plaintiff, however, ignores the fact that *individualized reviews of the subject contracts* took place.

130288867v2 0922494

130288867v2 0922494

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2012, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130288867v2  0922494