**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself | ) | |
| and all others similarly situated | ) | |
| Plaintiff | ) | 11-cv-1379 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| FIRST CREDIT SERVICES, INC. | ) | Magistrate Judge Morton Denlow |
| dba ACCOUNTS RECEIVABLE | ) | |
| TECHNOLOGIES | ) | |
| Defendant. | ) | JURY DEMAND |

**SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER
ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff submits the following Sur-Reply in Opposition to Defendant's motion for reconsideration of class certification:

**I.      Summary**

On December 19, 2011, this Court certified that this action would proceed on behalf of a class of persons whose cellular telephones FCS had contacted via an autodialer and who had not consented to the calls. *Exhibit 1 - Order Granting Class Certification at p.3.*  In doing so, this Court expressly rejected Defendant's arguments that the consent issue should preclude certification for various reasons, noting that "Defendant's objections go to whether a person is a member of the class in the first instance, not to the nature of the claim of properly identified class members." *Id.*

At the proverbial stroke of midnight, in its reply in support of its motion for reconsideration of class certification, Defendant presented the Court with documents that it claimed "now clearly demonstrates that Plaintiff provided his cell phone to his creditor" *Doc 93 at p.1.*  As will be shown below, Plaintiff did not provide his cell phone number to the creditor, nor do these documents establish anything, much less that Plaintiff provided prior express consent.  In fact the only "new

evidence" is that Defendant claims to know the date that the underlying creditor changed its records to include plaintiffs cell number. Defendant still has no evidence of how the creditor obtained that number, but claims that plaintiff "or someone on his behalf" *may* have given his cell number to the creditor during a telephone call on February 29, 2008, even though Defendant previously conceded that the creditor's record of that phone call did not provide any evidence of consent. Defendant's guess is further contradicted by Plaintiff's prior deposition testimony that he did not provide his cellular telephone number to the creditor and plaintiff's telephone records showing that he never even called the original creditor on the day in question.[1] Yet Defendant strains the evidence and calls plaintiff a liar in a desperate attempt to avoid liability and create the appearance of individual issues.

Regardless, defendant's arguments against certification all fail because defendant can apply the exact same defense to all of the class members through a ministerial review and production of the creditors' business records, which Defendant has already undertaken[2].

Finally, to the extent that the Court has any concerns about Plaintiff's ability to represent the class, Plaintiff's motion for leave to file an amended complaint adding two additional named plaintiffs who were in fact skip-traced by Defendant should absolve any such concerns.

## II.    Plaintiff Is Not Subject To Any Unique Defense

Defendant argues that Plaintiff consented to its calls by providing his cellular telephone number to his creditor and that such a defense makes Plaintiff an atypical and inadequate class

---

[1] The telephone records show that not only did plaintiff not call, no calls were placed from any family member's telephone nor plaintiff's work phone to the underlying creditor on the date that FCS now claims that plaintiff provided consent. *See Exhibit 2 - Plaintiff's Affidavit.*

[2] FCS' president asserted that it takes as little as 4 minutes per class member to determine consent. *See Declaration of Frank Russo - Doc. 36-7 at ¶20.*

Case: 1:11-cv-01379 Document #: 105 Filed: 04/02/12 Page 3 of 16 PageID #:920

member even though it **admits that it can apply the exact same defense to every other potential class member**. Defendant alleges that of all cell phone numbers at issue in the class, approximately 96% of those numbers were provided to it by the underlying creditors, exactly as it alleges that Plaintiff's creditor gave it Plaintiff's number, implying that the remaining 4% of the telephone numbers were skip traced by Defendant. *See Doc. 85 at p. 3.* Yet even for the numbers that were skip traced, Defendant claims that it can argue the same defense. *See Doc. # 36 at p. 5* ("Class members whose cell phone numbers were provided to Defendant by a skip trace company would have viable TCPA claims *as long as they had not consented to receive Defendant's calls (by for example giving the number to the creditor).*")(emphasis added)[3].

Just as it attempts to do with Plaintiff, Defendant can claim that any class member consented to the calls by providing their cellular telephone numbers to the creditor.  This defense is, therefore, not "peculiar to Plaintiff" such that it could destroy typicality or adequacy; the other class members are "subject to the same defense." *See CE Design Ltd. v. King Architectural Metals, Inc.*, 673 F.3d 721, 725 (7th Cir. 2011)(holding that the court could certify a class to determine the issue of consent even for the plaintiff the Seventh Circuit deemed provided consent.)  Defendant's arguments fail because all class members are subject to the very defense that it now claims to make Plaintiff

---

[3] Defendant's repeated citation to the *Mitchem* case regarding the skip-tracing issue is bizarre, considering that Judge Guzman ultimately certified a TCPA cell phone class similar to this one. *Mitchem v. Ill. Collection Service, Inc.*, 271 F.R.D. 617 (N.D. Ill. 2011).  There is absolutely no holding in *Mitchem* that a class representative whose number was not skip-traced cannot represent a class containing individuals whose numbers were skip-traced.  Quite the opposite, the Mitchem court explicitly held that the class could proceed if it was limited "to debtors whose cell phones defendant actually called and whose cell phone numbers defendant, **or the skip tracers with whom it works,** obtained from the debtors' health care providers." *Mitchem v. Ill. Collection Service, Inc.*, 2010 U.S. Dist. LEXIS 76581, *13-14 (N.D. Ill. 2010)

3

inadequate and atypical. The Court was therefore correct to reject these arguments when Defendant made them in its initial opposition to class certification.

### III.    Plaintiff Did Not Consent

A.    <u>Plaintiff did not provide his cellular telephone to the creditor</u>

Defendant argues for the first time, in its reply in support of its motion for reconsideration of class certification, that Plaintiff provided his cellular telephone number to Saab during a phone call on February 29, 2008. To support this claim, Defendant relies entirely on the declaration of Lynda Zitka, and two exhibits attached thereto. *See Zitka Declaration - Doc 98-1.* **Neither of these documents indicate that Plaintiff provided his phone number to Saab**.

As noted above, plaintiff's telephone records show that not only did plaintiff not call, no calls were placed from any family member's telephone nor plaintiff's work phone to the underlying creditor on the date that FCS now claims that plaintiff provided consent. *See Exhibit 2- Plaintiff's Affidavit*. This is not the matter of plaintiff being coy or having selective memory as Defendant disingenuously argues. Instead, plaintiff's evidence shows that no one from his family even called the creditor on the day in question let alone provided plaintiff's cellular telephone number. On the other hand, Defendant's only *assumes* or, perhaps more accurately, hopes that plaintiff (or someone on his behalf) called and that he had to have given his number.

According to her declaration, Ms. Zitka is an employee of Ally Servicing, LLC, which she states is "the account servicing company for Nuvell Credit Company, LLC, the successor in interest to Saab Financial Services." *Id at ¶1*. In other words, **Ms. Zitka is three companies removed from the records she is interpreting**. In her deposition, Ms. Zitka further testified that she has never received any training on the systems and procedures used by Saab in administering consumer

accounts and had never even been to Saab's customer call center facility. *See Exhibit 3 - Zitka Deposition at 30:6-15*. Yet she attempts to testify as to the meaning of notes (appearing in Exhibit 2 to her declaration[4]) taken by an unknown employee of Saab (whom she cannot identify and to whom she has never spoken) during a telephone call Saab received on February 29, 2008,. *Id at 54:3-18*. Regardless, these notes do not indicate that any number was provided to Saab during the phone call let alone that it was Plaintiff who placed the call.

Ms. Zitka's declaration further attempts to testify that another document (exhibit 1 to her declaration) shows that Saab changed the home phone number field in Plaintiff's account information from 847-XXX-2797 to 847-XXX-9705. *See Zitka Declaration - Doc 98-1 at ¶8*. Yet Ms. Zitka admitted in her deposition that she has no idea who created Exhibit 1, when it was created, how it was created, or even if the information contained therein was manually typed by a person or automatically populated by a computer. *See Exhibit 3 - Zitka Deposition at 45:8-14, 49:22-50:21*. She further testified that she did not could not explain how Saab kept track of phone number changes in their systems, other than to say that they are "tracked through system of record." *Id at 47:2-24*.

Assuming that FCS eventually authenticates the record showing when it changed Mr. Pesce's number, neither FCS nor the underlying creditor have any real knowledge of how it obtained

---

[4] Defendant actually submitted this document to the Court as an exhibit to its original memorandum in response to Plaintiff's motion for class certification on September 8, 2011. *See Doc 36-1 at pp. 32-33*. The Court, therefore, already considered this document before it granted class certification. Furthermore, Defendant, whose president testified that he was very familiar with the creditor's records, admitted in its 30(b)(6) deposition, taken on November 17, 2011, that it had not documents that established consent. *See Exhibit 4 - FCS's 30(b)(6) Deposition at 132*. (Q.    Do you have any communications from  Mr. Pesce or have a mailing list, any documents of Mr. Pesce, giving the number 9705?    A.    I don't believe so.    Q.    Are there any notations or any documents from GMAC showing that Mr. Pesce provided that 9705 number? A.    I did not see that.) Defendant cannot now claim that this document establishes consent when it already admitted that it does not.

plaintiff's cellular telephone number. Instead, the most that Ms. Zitka can say is that she made the "conclusion" that "during the February 29, 2008, call, Mr. Pesce (or someone else on his behalf) provided the operator with the telephone number ending in 9705..." *See Zitka Declaration - Doc 98-1 at ¶10.* In her deposition, Ms. Zitka testified she "believed" Mr. Pesce to be the caller based on "general knowledge," but admitted that she had **no personal knowledge that Mr. Pesce provided his cellular telephone number** during the call. *See Exhibit 3 - Zitka Deposition at 59:1-6.* Further, when asked whether it was "possible that the operator simply verified security information and nothing else" during the call, Ms. Zitka testified: "I do not know." *Id at 62:1-7.*

Defendant cannot establish "prior express consent" by pointing to a telephone call occurring three years after the "transaction resulting in the debt owed," and certainly cannot do so with respect to a call that it can neither affirmatively attribute to Plaintiff nor show to have included the provision of a telephone number. Indeed, Plaintiff's phone records show that he did not place any calls to Saab on this date, he denies that he did so, and denies that he ever provided his cellular telephone number. *See Exhibit 2 - Plaintiff's Affidavit.* Defendant's attempt create the appearance of individual issues by overstating its evidence should be disregarded.

      B.    <u>Even if Defendant's claims are true, it did not have prior express consent to call Plaintiff</u>

The TCPA only allows autodialed calls to cellular telephones if the calls are made for emergency purposes or with "**prior express consent**." *47 U.S.C. § 227(b)(1)(A) (emphasis added).* As applied to debt collectors such as Defendant, the FCC has ruled as follows: "We **emphasize** that prior express consent is deemed to be granted **only if** the wireless number was provided by the consumer to the creditor, **and** that such number was provided during the **transaction that resulted in the debt owed**." *Exhibit 5- In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 F.C.C.R. 559 at ¶10 (Dec. 28, 2007) ("2008 FCC Ruling")[5].

To illustrate the meaning of the phrase "the transaction that resulted in the debt owed," the FCC held

that creditors could prove consent through records such as "purchase agreements, sales slips, and

credit applications." *Id*.

Defendant *assumes* that Plaintiff provided his cellular telephone number to the creditor

during a telephone call on February 29, 2008. As will be shown below, this contention is false, but

even if it were true, Defendant's consent defense fails because Plaintiff did not provide his cellular

telephone number during the "transaction that resulted in the debt owed." It is undisputed that

Plaintiff incurred the debt in question by executing a lease agreement and application for credit with

Saab Financial Services ("Saab") on June 25, 2005 and that neither of those documents list

Plaintiff's cellular telephone number. *See Exhibit 6*. Yet it is those documents through which

Defendant must prove "prior express consent" because, as the FCC recognized, it is those documents

that memorialize the "transaction that resulted in the debt owed." *See Lee v. Credit Mgmt., LP*, 2011

U.S. Dist. LEXIS 151454, 37-39 (S.D. Tex. Dec. 27, 2011)("Defendant argues that Lee consented

to the call because it obtained the number from Comcast. Notably, however, Defendant offers no

explanation for how Comcast obtained the number, nor does it offer any "purchase agreements, sales

slips, and credit applications" that reflect that Lee provided them with the number... Nevertheless,

in a further attempt to support its contentions and shoulder its burden of proof, Defendant then

submitted a "work order", dated October 10, 2009, which it claims it only realized that it had

_____

[5] Under the Hobbs Act, the FCC's TCPA rulings are not subject to review by U.S. District Courts and are therefore final and controlling. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F. 3d 443, 446 (7th Cir. 2010).

received from Comcast on October 21, 2011, after a "last minute" request.... Although the work order produced by Defendant may ultimately assist it in proving consent, the Court believes that this document, standing alone, falls short of actually establishing Lee's consent under the Act.")

The best Defendant can do is point to a phone call from an **unknown**[6] person to Saab nearly **three years after the debt was incurred** and say that the number may have been provided in that call, even though there is no evidence that it was. Such a phone call is not a "transaction" as contemplated by the FCC, let alone one that "resulted" in any debt. Unlike even a work order that may be deemed part of the transaction that resulted in the debt, as a document that was necessary to the completion of the underlying transaction, the purported call at issue in this case had no bearing on any transaction resulting in a debt. Even if Defendant's claims about that phone call are correct, Defendant has still not established "*prior express consent*" as a matter of law. *2008 FCC Ruling*.

## IV. Plaintiff Is More than Adequate to Represent the Class

The Supreme Court has made it abundantly clear that a class representative is adequate so long as his or her interests do not conflict with the interests of the class and the case is prosecuted vigorously. In *Surowitz v. Hilton Hotels*, the Supreme Court found the named Plaintiff to be an adequate class representative in a derivative action even though:

"Mrs. Surowitz showed in her answers to questions that she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not

---

[6] The Declaration of Lynda Zitka, upon which Defendant entirely bases its assumptions, clearly indicates that the creditor has no idea who placed that call to GMAC. *See Zitka Declaration - Doc. 98-1 at ¶10* ("it is my *conclusion* that during the February 29, 2008 call, Mr. Pesce (*or someone else* on his behalf) provided the operator with the telephone number...")(emphasis added). Furthermore, Plaintiff disputes that he called Saab on that day or provided his cellular telephone number to Saab. *See Exhibit 2 - Plaintiff's Affidavit*.

know any of the defendants by name, that she did not know the nature of the alleged misconduct, and in fact in signing the verification she had merely relied on what her son-in-law had explained to her about the facts of the case." 383 U.S. 363, 366 (1966)

*See also McCall v. Drive Fin. Services, L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006)("confusion about some aspects of the case does not create a conflict to render [a class representative] inadequate").

Defendant argues that Plaintiff is inadequate to represent the class because, it claims, "Plaintiff's testimony that he did not provide his cell phone number to GMAC is not credible." *Doc. 93 at p.7.* Although it acknowledges that Plaintiff testified that the he did not provide his cell phone number to the creditor, Defendant attempts to manufacture a credibility problem by pointing out deposition questions about his communications with the creditor to which Plaintiff answered " I don't recall." Yet Plaintiff resolved any confusion about this issue in his deposition when *defense counsel* (prior to cross examination by Plaintiff's counsel) asked him:

```
14    Q.  Is your more accurate answer today that
15  you don't recall or do you believe that your
16  answer in Paragraph 13 that you never provided
17  your cell phone number is the more accurate
18  answer?
19    A.  I believe I never provided my cell
20  phone number.

4    Q. You said you don't give out your cell
5  phone willy-nilly. What do you mean by that?
6    A. I'm cautious on it. It's even on the
7  Federal Do-not-call list.
```

*See Exhibit 7 - Deposition of Plaintiff Vito Pesce at 53:14-20, 57:4-8, 59:4-7.* Plaintiff's wife, Laura Pesce, also testified at her deposition that she never provided Plaintiff's number to GMAC or FCS:

```
6    Q. Have you ever provided his cell phone
7  number ending in 9705 to Saab Financial?
8    A. No.
9    Q. Did you provide his cell phone number
```

10  ending in 9705 to Nuvell Credit?

11      A. No.

12      Q. Did you provide his cell phone number

13  ending in 9705 to GMAC Credit?

14      A. No.

15      Q. Have you had any discussions with your

16  husband regarding whether or not he provided his

17  cell phone number ending in 9705 to Saab Financial,

18  Nuvell Credit, or GMAC Credit?

19      A. No.

20      Q. Did your husband ever tell you that he

21  received a call on his cell phone related to an

22  alleged debt for the Saab vehicle?

23      A. No.

and further:

21      Q. Okay. Did you ever speak with Nuvell to

22  update your husband's contact information to

23  identify his cell phone?

24      A. No

and further:

1       Q. And the same question with regard to --

2   I'm trying to get all the entities covered here.

3   Did you ever call GMAC to update the

4   contact information to identify your husband's cell

5   phone?

6       A. No.

and finally:

Q.      Fair enough. With all that in mind, did

14  he ever have a discussion with you regarding how he

15  believed ART may have gotten his cell phone number?

16      A. No. He just -- we have no idea, because

17  my number is it. My number goes on everything,

18  because I'm the main number. My number goes on all

19  contracts, bills. Everybody has to call me.

*See Exhibit 8 - Deposition of Laura Pesce at 12:6-23, 22:13-19, 27:21-24, 28:1-6.*

To the extent that any questions remain about Plaintiff's testimony, his Affidavit attached

hereto (along with the telephone records for his entire family and his office telephone) clearly states

10

that he did not provide his cell phone number to the creditor. *See Exhibit 2 - Plaintiff's Affidavit*. Defendant's portrayal of Plaintiff as dishonest is simply unfounded, and in any event, is not even supported by Defendant's own evidence.  *See Zitka Declaration - Doc 98-1 at ¶10* ("concluding" that plaintiff "or someone on his behalf" must have provided the cellular number) .  The concession that the evidence does not even show who called that day dooms Defendant's accusations.

In any event, "for an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design Ltd v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011)(citations omitted).  In *CE Design* (a TCPA fax blasting case), the 7th Circuit found that the district court had erred by finding the named Plaintiff's potential credibility problem "immaterial" to the issue of adequacy and thus remanded the case to the district court for a determination of whether the named Plaintiff was an adequate class representative. *Id at 724*.  In that case, the named Plaintiff, who had filed over 150 lawsuits under the TCPA, testified that it was not aware that, by voluntarily publishing its fax number in a business directory, it had potentially consented to be contacted at that number.[7]  The 7th Circuit held that the record raised "serious doubts concerning the truthfulness of [that] testimony" considering the named Plaintiff's obvious and almost professional familiarity with the law. *Id at 727*.  There are no such concerns about Plaintiff's truthfulness in this case.  Defendant simply disputes Plaintiff's testimony that he did not provide his

---

[7] The named Plaintiff in *CE Design* had in fact signed an agreement with the Blue Book directory which explicitly stated that "by supplying The Blue Book with your fax and e-mail address, you agree to have The Blue Book and users of the Blue Book services communicate with you via fax or e-mail." *Id at 725*.

11

cell phone number to his creditor. Defendant's assertions that Plaintiff is liar does not make it so.

Finally, it is important to note that this case is the first and only TCPA case that plaintiff has brought. Mr. Pesce has actively participated in the litigation of this case and has always looked out for the classes interest even going so far to reject an individual offer to settle this matter for $90,000.00. *See Exhibit 7 - Deposition of Plaintiff Vito Pesce at 8:8-14 (*"Q. ...Could you explain to me why you rejected the settlement figure that's identified in Paragraph 1 of the July 18, 2011 letter? A. Well, it's a class case. It's not about me individually."). Pesce's actions should speak volumes as to his adequacy.

## V.     Individual Issues do not Predominate

This Court has already found that issue of consent "does not predominate over questions common to the class.  The class includes only those persons who have been contacted on their cellular telephone and who have not consented to the calls.  Defendant's objections go to whether a person is a member of the class in the first instance, not to the nature of the claim of properly identified class members." *Exhibit 1 - Order Granting Class Certification at p.3*; *see also Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 5763, *2 (N.D. Ill. January 21, 2011)(holding that evidence that a particular class member gave consent "tends to show not that individual consent issues predominate among class members, but instead that the individual in question *is not a class member at all*" where class was defined nearly identically to the class in this case).  Defendant does not add anything new to the discussion, but regurgitates the same arguments already rejected by this Court.

A defendant cannot defeat class certification by arguing that it will need to manually review a large number of documents to identify class members or resolve individual issues. *See Holtzman*

*v. Turza*, 2009 U.S. Dist. LEXIS 95620, *12, *17 (N.D. Ill. October 14, 2009) (Gettleman, J.) (granting certification of TCPA class even though potential class members included "individuals who had given [defendant] their consent to be included among the fax recipients" because the defendant could distinguish those persons from other class members through ministerial review); *Lau v. Arrow Fin. Servs.*, LLC, 245 F.R.D. 620, 624 (N.D. Ill. 2007)(certifying class even where "the definition required investigation into various records to determine which individuals from a large population qualify for class membership.").

Just as Defendant argues in this case, the defendant in *Mitchem* claimed that individual issues of consent would predominate the action because Defendant would have to "manually review the collection notes for that debtor and the material provided by the creditor for that debtor." *Mitchem v. Ill. Collection Serv.*, 2010 U.S. Dist. LEXIS 76581 at *14. The Mitchem court rejected this argument because, even though such records did not exist in digital form, the "defendant [was] capable of compiling a list of debtors who did not, under plaintiff's theory, consent to its calls" through review of those records. *Id.*

Defendant has already established that it can identify the class members and resolve issues of consent through the ministerial review of documents already in its possession. Recent communications with defense counsel confirm as much:

> "When the process is all done, you'll be able to run through the database to confirm that the contracts prove consent (with the name of and number of each putative class member being identified).
>
> As for an update, I'll provide you with one next Monday. As I'm sure you can see, the contracts (and the absence of skip traces) will support our high estimates of consent. For these reasons, we don't think that the current class is without merit."

*See Exhibit 9 - Email Communications.*

13

In a recent appearance before Magistrate Judge Denlow, FCS's counsel further claimed that

FCS had been successful in its ministerial review of documents relating to the identification of class

members and consent:

> 7        THE COURT: So what are you finding so far? What's
> 8  the discovery showing?
> 9        MR. VLAHAKIS: We have a lot of --
> 10        THE COURT: Are you finding that they had approval,
> 11  didn't have approval?
> 12        MR. VLAHAKIS: Yes. My client has a lot of
> 13  contracts. The majority of their contracts are with gyms. We
> 14  have found that with the gym memberships people are placing
> 15  their own cell phone number down on the form because typically
> 16  the forms require it. Or somebody even puts down their number
> 17  as a residential number. We have found out that by looking at
> 18  that number that was actually a cell phone number that they had
> 19  self identified. We're having some success, but not as high of
> 20  success with the automobile contracts.
> 21        As you may recall, Mr. Pesce's was for a lease of a
> 22  Saab vehicle. He never provided on the original form his cell
> 23  phone number. We find some that do.

*See Exhibit 10 - Transcript of Proceedings at p.4.* It is clear that Defendant has already obtained the

vast majority of relevant documents from the class members's creditors and that it is already

reviewing such documents. In fact, Defendant claims to have already established consent with

respect to approximately one third of telephone numbers at issue. *See Exhibit 9 - Email*

*Communications.* As the Court already recognized, such persons who provided consent are simply

not class members, and Defendant's actions demonstrate that the class is identifiable through review

of the documents already in its possession. The Court should therefore adhere to its original ruling.

**VI.     Plaintiff Seeks Leave to File an Amended Complaint to Add Two Additional Named Plaintiffs Whose Cellular Telephone Numbers Were Skip-Traced by Defendant**

Shortly after filing this brief, Plaintiff will file a motion for leave to file an amended

complaint, which will add two additional named plaintiffs, whose cellular telephone numbers were

skip-traced by Defendant[8]. To the extent the Court has any concerns about Mr. Pesce's adequacy to represent the class, such the amendment would moot those concerns. Similarly, the amendment would resolve Defendant's concerns about typicality because Defendant admits that it obtained the phone numbers of the two new class representatives through skip tracing. *See In United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), (affirming decision permitting intervention by a class member even after a final judgment denying class certification had been entered)*; Spizziri v. C.I.L, Inc.*, 1994 U.S. Dist. LEXIS 11719, *10 (N.D. Ill. 1994) ("a class action ordinarily should not be dismissed, compromised or abandoned without affording other class members an opportunity to intervene")*, citing* NEWBERG, H.B., CONTE, A., NEWBERG ON CLASS ACTION § 2.26 (3d ed. 1992); *See also, Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 253 (2d Cir. 2011) ("if, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question")

## VII.    Conclusion

Defendant cannot establish prior express consent because Plaintiff never provided his cellular telephone number to the creditor. In any event, the consent defense is applicable to all class members and has already been resolved through ministerial review of the creditor's records for at least one third of the class. To the extent any concerns about Plaintiff's adequacy to represent the class remain, they will be mooted by the addition of two new class representatives.

---

[8] One of these additional class representatives is not even the debtor on the account Defendant was attempting to collect, but rather a debtor's family member whom Defendant skip-traced and called repeatedly even though he had never before communicated with the creditor or Defendant about the debt.

15

Respectfully submitted,
/s/ Timothy J. Sostrin

Keith J. Keogh
Craig Shapiro
Timothy Sostrin
KEOGH LAW, LTD.
101 N. Wacker, Dr., Ste. 605
Chicago, Il. 60606
312.726.1092/312.726.1093 (fax)
TSostrin@keoghlaw.com

## CERTIFICATE OF SERVICE

I certify that on April 2, 2012, I electronically filed the foregoing memorandum via the Court's CM/ECF system, which will perfect service upon the following:

James C. Vlahakis
HINSHAW & CULBERTSON, LLP
jvlahakis@hinshawlaw.com

/s/ Timothy J. Sostrin