IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

---

| | | |
|---|---|---|
| VITO A. PESCE, on behalf of himself and all others similarly situated | ) ) | |
| Plaintiff | ) ) | 11-cv-1379 |
| v. | ) ) | Judge Robert W. Gettleman |
| FIRST CREDIT SERVICES, INC. dba ACCOUNTS RECEIVABLE TECHNOLOGIES | ) ) ) ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | JURY DEMAND |

---

**REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT INTERVENING
ADDITIONAL CLASS REPRESENTATIVES INSTANTER**

Plaintiff Vito Pesce and proposed intervenors Kofi Jamison ("Jamison") and Diana Smith ("Smith") respectfully submit the following reply in support of their motion for leave to file a second amended complaint intervening Jamison and Smith as additional class representatives for the Illinois Class already certified by this Court and as representatives of an additional class for persons, like Jamison and Smith, whose cellular telephone numbers were obtained by FCS via skip tracing ("Creditor Class"). In support hereof, Plaintiff, Jamison, and Smith state:

**I.     PROCEDURAL HISTORY**

1.      After discovering that Defendant's applicable insurance policy, which is a diminishing policy, and net worth could not support meaningful relief to a four year national class, Plaintiff sought and was granted leave to file an amended complaint, which narrowed the proposed class to one year for persons in Illinois only. *See Doc. 23 - Agreed Motion for Leave to File Amended Complaint; Doc. 25 - Amended Complaint; Doc 26 - Amended Class Motion.*

2.      Plaintiff's proposed Creditor's class is very narrow (limited to just two creditors and

includes only skip traced calls) and plaintiff anticipates it is smaller than the current certified class. Because the class is very narrow and is vastly smaller than the class originally alleged, it will not delay this litigation to allow an amendment that includes the creditor class.

3.  Further, adding the underlying creditors is more important now than when plaintiff filed the motion to amend due to a change in Illinois law. In *Standard Mutual Insurance Company v. Lay*, 2012 Ill. App. LEXIS 291 (4th Dist. 2012), the court found the TCPA was a penal statute that is not insurable as a matter of Illinois law and public policy. *Id*. at 37. While plaintiff believes that if the Illinois Supreme Court grants cert, it will overturn this opinion, it is possible that the opinion will be affirmed or cert[1] not granted. As a practical matter, many insurance companies are withdrawing offers or at least not engaging in substantive settlement discussions until there is clarity on this issue in Illinois[2].

4.  As such, it is critical to add the underlying creditors to the case in light of defendant's inability to pay a judgment and questionable insurance position.

5.  In addition, adding Jamison as a plaintiff may well moot the issue of whether providing a cellular number to be called back regarding a specific topic is express consent such that it was provided in the "transaction that resulted in the debt owed" because Jamison was not even an

---

[1] If leave to appeal is not granted, the issue will be somewhat of a quagmire as the First District of Illinois found damages under the TCPA to be remedial in *Italia Foods, Inc. v. Sun Tours, Inc.,* 399 Ill. App. 3d 1038, 1066-68, (1st Dist. 2010), However, the opinion was vacated on other grounds by *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350 (2011).

[2] It is unclear at the moment what choice of law would govern defendant's insurance policy as plaintiff's counsel could not find a choice of law provision in the insurance policy produced in this case, defendant is a New Jersey corporation and the insurance company is headquartered in Minnesota.

account holder, but a person FCS was calling regarding his sister's debt[3]. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 at ¶10 (Dec. 28, 2007) ("2008 FCC Ruling") and *Lee v. Credit Mgmt.*, LP, 2011 U.S. Dist. LEXIS 151454, 37-39 (S.D. Tex. Dec. 27, 2011).

II. **FCS' OBJECTIONS TO THE AMENDED COMPLAINT BASED ON THE PROTECTIVE ORDER ARE UNFOUNDED**

   A. **The Protective Order Does Not Apply to Plaintiff's Counsel's Communications with Class Members**.

6. FCS objection to filing the amended complaint implies that plaintiff's counsels contacting class members itself violates the protective order. It implies this by omitting the phrase in the order that "Nothing in this order shall prevent counsel from contacting class members regarding claims based on the Telephone Consumer Protection Act," which is all that occurred Doc. 43. ¶17.

7. More importantly, the protective order does not apply to any contact with the persons listed in the skip trace lists as those lists were not subject to the protective order because the documents were not designated as confidential.

8. The procedural history for the production of the lists in question is that on August 25, 2011, plaintiff filed a motion to compel against FCS because it had not identified the persons called as requested in interrogatory number 2 or provided any basis for consent as requested in interrogatory number 3. Doc. 29.

9. On September 12, 2011, FCS agreed to produce and the order provided that it was

---

[3] FCS contends that Smith provided her cell number to the creditor to be called back years after the contract, but once again, this is not express consent plaintiff does not believe provided in the "transaction that resulted in the debt owed

compelled to produce the skip trace list by September 16, 2011. Doc. 41. The protective order was also entered on the same date. Doc. 43. Subsequently, the court granted the rule to show cause for FCS' failure to produce the skip trace list. Doc 64.

10. In any event, the list was produced by agreement and subsequently by two court orders. While FCS *could* have designated the skip trace list as confidential because the protective order was entered prior to the dates it was ordered to produce the list, it did not do so.

11. FCS cannot object to amending the complaint based on any argument that plaintiff or his counsel violated a protective order when that order does not apply because it did not designate the lists at issue as confidential. In addition, even if it did designate the lists as confidential, plaintiff's counsel would not have been prohibited from contacting the persons on the list regarding the TCPA claims in this case as the agreement provides "Nothing in this order shall prevent counsel from contacting class members regarding claims based on the Telephone Consumer Protection Act." 41 ¶17. Further, any prohibition on solicitations was specifically limited to new lawsuits against FCS only and does not even cover new lawsuits against any other party. Doc 41. ¶17.

12. Specifically, the Protective Order provides:

> 2. This Order shall **govern the use and handling** of all documents, testimony and information produced or given in this action **which are expressly designated as confidential by the producing party or non-party/subpoena respondent** ("Designating Person") by a legend reading "Confidential," "Confidential pursuant to Court Order," or words to that effect, in accordance with the terms hereof.
>
> 4. Documents that **may** be protected under this order and designated as confidential are as follows:
> > a. To protect the putative class members from identify theft, the names, addresses, telephone numbers account numbers/identifiers and confidential financial information of the putative class members;
> > b. Personal Health Information as defined in the Health Insurance Portability and Accountability Act ("HIP AA");

4

      c. Defendant's trade secrets;
      d. Defendant's collection results and forecasts;
      e. Defendant's customer lists;
      f. Defendant's financial statements;
      g. Defendant's customer pricing information and/or commissions;
      h. Defendant's business plans, proposals, forecasts and the like;
      i. Defendant's contracts with non-parties; and
      J. Defendant's business relationships with non-parties

17. At the written request of opposing counsel, all material not received in evidence and treated **as confidential under this Order**, with the exclusion of any material which in the good faith judgment of counsel are work product, shall be destroyed by counsel and certified to the Designating Person as having been destroyed. Notwithstanding this provision, **Counsel are entitled to retain an archival copy** of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Confidential material. **Nothing in this order shall prevent counsel from contacting class members regarding claims based on the Telephone Consumer Protection Act.** Plaintiff's counsel agrees that they will not use any putative class list or any other information which may identify putative class members to solicit TCPA or other claims from putative class members against defendant absent court approval.

Doc: 43 p. 1 & 7-8 (Emphasis Added.)

13. Paragraph 17 relates to the retention and destruction of information at the end of this litigation that was designated as confidential under the protective order. It is important to note that the last two sentences of paragraph 17 were not in the original draft protective order that defendant provided[4]. Instead, when plaintiff's counsel objected to paragraph 17 because it would have required the destruction of all class information at the end of this litigation, FCS expressed its concern that

---

[4] Paragraph 17 of the draft protective order submitted by FCS provided:

17. At the conclusion of the litigation, all material not received in evidence and treated as confidential under this Order, with the exclusion of any material which in the good faith judgment of counsel are work product, shall be destroyed by counsel and certified to the designating party as having been destroyed. All lists of class members or putative class members shall be destroyed by class counsel and certified to the designating party as having been destroyed. *See Exhibit 1*.

5

any retained class list would be used for advertising. *See* comment to protective order by FCS counsel [A2] attached hereto as *Exhibit 2*. The language in paragraph 17 was agreed upon in order to preclude using any class information designated as confidential to solicit for *additional* lawsuits against FCS after this litigation. Further, as can be seen from the comments and revisions, FCS initially attempted to limit contact to class members only as witnesses. *Id*. When plaintiff's counsel objected to any limitation on his communications with putative class members, that limitation was removed by agreement and resulted in the agreed protective order that was filed by FCS and entered by the court. Doc. 43. FCS cannot rewrite the protective order when it specifically agreed to remove the limitation on contacting class members for this case.

14. In any event, on at least three occasions on October 19, 2011, November 2, 2011 and November 28, 2011, FCS provided plaintiff's counsel copies of the lists for the persons who were skipped trace as well as the underlying contracts. None of these documents were marked as confidential nor did the accompanying e-mails designate these documents as confidential. *See* e-mails and first page of each list with all identifying information redacted attached hereto as *Exhibits 3, 4,* and *5*.

15. Plaintiff's counsel does not refute that FCS could have marked the lists confidential, but because it repeatedly did not designate any version of the skipped trace list as confidential, the list was not subject to the protective order because the order required that any such document must be **expressly designated as confidential by the producing party or non-party/subpoena respondent** ("Designating Person") by a legend reading "Confidential," "Confidential pursuant to Court Order," or words to that effect. Doc. 41 at ¶2. The reason for such designation is self-evident: A party cannot claim that one party should have known a document was confidential or was meant

6

to be confidential.

16.     This is not a technical argument for FCS' failure to designate the skip trace information as confidential. FCS knew full well that plaintiff's counsel's office was contacting persons on the skip trace list without objection and even offered to vet any consent issues for these persons as shown below.

17.     In addition, plaintiff's counsel did not consider that paragraph 17 of the protective order, which dealt with destruction of documents at the end of litigation and using the list for advertising purposes[5], had any application to any communications with class members after certification[6]. If counsel did, he would have sought direction from this Court and would not have relied on any belief that the communications were allowed because plaintiff's counsel already represented the proposed interveners. As this Court may be aware, plaintiff's counsel does not make any assumptions as to any order of this Court or any court for that matter and has always sought leave of court or permission from deviating from any order. If undersigned counsel would have thought for a second that the protective order had any impact on the skip trace list, counsel would have sought leave of court.

18.     Finally, even if the protective order did apply, it would not limit any ability to add the underlying creditors or even file other lawsuits against the creditors as the concern that FCS had was prohibiting advertising for claims against it and the language was limited as such. The order only

---

[5] Once again, any limitation to contacting these persons as to only being witnesses was removed from the protective order.

[6] For the same reasons, there could be no solicitations as a matter of law as to claims the class members already had as plaintiff's counsel already represented the proposed plaintiffs.

precluded solicitation of "TCPA and other claims from putative class members against *defendant*.[7]" Doc. 41 ¶17.

### B. FCS' Accusations Against Plaintiff's Counsel Are a Red Herring and Fishing Exhibition

19. As shown above, the Protective Order does not apply to the skip class list. Plaintiff suspects that the objection to amending the complaint are strategic to make plaintiff prove a negative as well as to allow FCS to obtain privileged discovery it would not ordinarily be allowed to obtain because post certification communications with class members are privleged . "Once a class action has been certified, as has this case, counsel for the plaintiff class is considered to be the representative of all class members who have not chosen to be represented by other counsel." *Montgomery v. Aetna Plywood, Inc.*, 1996 U.S. Dist. LEXIS 9213, 12-13 (N.D. Ill. June 28, 1996). The court further held: "As for plaintiffs' attorneys' contact with their own clients, defendants complain that the attorneys may attempt to communicate with class members regarding additional litigation. That, however, is no basis for prohibiting contact. That is precisely the type of communication that *Gulf Oil* holds is protected by the First Amendment absent a clear and particularized showing of a need for prohibition. *Id.*

20. Further, numerous courts have rejected the argument that lawyer-client relationship is lacking because it did not arise through the initiative of the class members because once the class

---

[7] FCS notes that Pesce released his claims against GMAC and argues plaintiff used the list to find another GMAC plaintiff. Putting aside the fact that plaintiff did not release his claims against GMAC until after this matter was filed, FCS collects a lot of accounts on behalf of GMAC and its hardly surprising that one of the proposed plaintiff's had GMAC as an underlying creditor. However, even if ¶17 applied to the lists at issue, ¶17 is expressly limited to claims against FCS and does not prohibit any additional parties. Ironically, the proposed intervening plaintiffs would not be prohibited from filing a separate lawsuit against GMAC or Honda even if the list was designated confidential.

has been certified, class members are represented by the class counsel. *Resnick v. ADA,* 95 F.R.D. 372, 376-377 (N.D. Ill. 1982)(collecting cases). Further, class counsel have the fiduciary responsibility and all the other hallmarks of a lawyer representing a client. *Id.*

21. Once again, even assuming the class lists were designated confidential, plaintiff's counsel did not consider that paragraph 17 of the protective order, which dealt with destruction of documents at the end of litigation and using the list for advertising purposes[8], had any application to any communications with class members after certification[9] especially as the order specifically provides "Nothing in this order shall prevent counsel from contacting class members regarding claims based on the Telephone Consumer Protection Act." Doc. 41 ¶17. If counsel did, he would have sought direction from this Court and would not have relied on any belief that the communications were allowed because plaintiff's counsel already represented the proposed interveners due to the class certification order.

    **C.    FCS Was Aware That Pesce's Counsel Were Contacting Persons on the Skip Trace List Both Pre and Post Certification**

22. As noted above, the parties negotaited the terms of the protective order to provide that *if* any possible class information was designated as confidential, plaintiff would not be limited in contacting the persons identified. *See Exhibit 2*.

23. At the presentment of plaintiff's motion to strike the reply, plaintiff's counsel informed the court that he may have other class members who may be willing to substitute as

---

[8] Once again, any limitation to contacting these persons as to only being witnesses was removed from the protective order.

[9] For the same reasons, there could be no solicitations as a matter of law as to claims the class members already had as plaintiff's counsel already represented the proposed plaintiffs for these claims.

plaintiffs, but that counsel wanted to determine if Mr. Pesce was still adequate in light of his substantive participation in this matter including rejecting a sizable individual offer. This Court commented that it may be better to substitute them in now to avoid briefing the decertification motion[10].

24. After court, plaintiff's counsel discussed with FCS' counsel the scheduling of the pending motion and any new named plaintiffs. Pesce's counsel informed FCS' counsel, that counsel had no retainer agreements with anyone willing to be named plaintiffs, but that several persons expressed willingness to undertake a more active role when plaintiff's counsel previously contacted class members pre class certification to verify certain of FCS' consent arguments[11].

25. Counsels discussed the fact that plaintiff may raise attorney work product on the conversations pre-certification or may waive it for the limited purposes of insuring that there was no solicitations and that any new plaintiff is adequate, but that plaintiff would not waive any attorney client privilege for any communications post certification.

26. During that conversation, defense counsel offered to vet any new potential plaintiff so that the parties could avoid any consent defense akin to Mr. Pesce's sitaution. The offer to vet an alternative plaintiff was later repeated via e-mail[12]. *See Exhibit 6*.

27. Rather than objecting to any contact with the skip trace class members, FCS remained silent and now seeks to end run the attorney client privilege by making accusations that

---

[10] Plaintiff's counsel is not arguing that the Court's comments were anything more than a preference for how to proceed in this matter.

[11] Plaintiff's counsel also informed defendant's counsel that there was no mailings or advertisements sent to the list.

[12] This offer was not accepted in light of the possibility that FCS would attempt to offer any such persons a sizable individual settlement.

plaintiff's counsel violated the protective order in order to force plaintiff's counsel to gamble and waive privalege in order to show nothing improper took place. Because the protective order was not applicable to the skip trace list and even if it was, it did not limit counsel's communications with these persons regarding their TCPA claims, FCS' fishing expedition should not be allowed.

      **D.**      **FCS' Case Law Is Not Applicable**

      28.      The cases FCS relies on are inapposite. For instance, all of the cases dealt with discovery that was clearly subject to a protective order and was either used in other cases or used to find plaintiffs for separate litigation[13], which is not the case here. For example, in *Kaufman*, no class was certified, persons were solicited to separately sue defendant in new litigation and documents at issue were specifically limited for used to determine whether the numerosity component for certifying a class action was present. *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1092 (10th Cir. Colo. 2010).

      29.      As this Court is well aware, *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) involved targeted advertisement mailings to solicit a named plaintiffs against unrelated defendants to commence new litigation where that mailing represented that the addressee was a class member when no class action was even pending at the time. Both this Court and the Seventh Circuit found that there was no violation of the protective order at issue, but both this Court and the Seventh Circuit were troubled by the representation that the addressee of the advertisement were class members when no action was even pending.

      30.      In this case, there were no mailings, any contact pre certification was limited solely

---

[13] Once again, even if ¶17 applied to the lists at issue, ¶17 is expressly limited to claims against FCS and does not prohibit any additional parties or litigation against third parties such as GMAC or Honda.

11

to consent issues and any contact post certification was with class members who counsel already represented for their TCPA claims against FCS. Further, there has been no attempt to create additional litigation. Instead, plaintiff has sought leave of court to amend the complaint in this matter and has not sought any new claims, but only sought to add parties who were already liable[14].

### III. Justice Requires Amendment, Which Will not Prejudice Defendant

31. The core facts and issues set forth in the proposed amended complaint are no different than those already litigated by the parties. In fact, Plaintiff requires **no additional discovery** from the defendants other than the identity of the members of the Creditor Class. To the extent Defendants need any additional discovery, no deadline or trial date has been set. Further, plaintiff already propounded discovery in May 2011 for a broader national class to which FCS responded. FCS has not refuted plaintiff's assertion that it should be relatively easy for FCS[15] to determine the number of persons who may fit within the Creditor Class, which is a much smaller subset of the class discovery plaintiff sought in May 2011.

32. The amendment proposed in this case therefore will not prejudice Defendant. *See Johnson v. Oroweat Foods*, 785 F. 2d 503, 510 (4th Cir. 1986) (court held that the addition of new factual allegations or a change in legal theory only prejudices the defendant if the amendment is sought shortly before or during trial); *Hely & Patterson Intern v. F.D. Rich Housing*, 663 F. 2d 419,

---

[14] Plaintiff could seek judgment against FCS and could file an action against the underlying creditor for payment of the judgment such that it would appear that any creditor would prefer to be allowed to participate in the defense of this action.

[15] Prior to seeking to amend the complaint to narrow the class to Illinois and one year, FCS produced a variety of information related to putative class members who were skip traced and was able to produce reports by location and date range. There should be no reason why it cannot do so again especially when the putative class is limited to only two creditors.

426 (3rd Cir. 1981) ("In the context of a 15(a) amendment, prejudice means that the nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments . . . been timely."); *Head v. Timken Roller Bearing Co.*, 486 F. 2d 870, 873 (6th Cir. 1973) ("amendments should be tendered no later than the time of pretrial . . .").

33. Finally, to the extent the Court has concerns about Plaintiff's ability to represent the certified Illinois Class, the addition of Jamison and Smith as class representatives promotes justice by preserving the class already certified by this Court. *See In United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), (affirming decision permitting intervention by a class member even after a final judgment denying class certification had been entered)*; Spizziri v. C.I.L, Inc.*, 1994 U.S. Dist. LEXIS 11719, *10 (N.D. Ill. 1994) ("a class action ordinarily should not be dismissed, compromised or abandoned without affording other class members an opportunity to intervene")*, citing* NEWBERG, H.B., CONTE, A., NEWBERG ON CLASS ACTION § 2.26 (3d ed. 1992); *See also, Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 253 (2d Cir. 2011) ("if, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question"); *In re Initial Pub. Offering Sec. Litig.*, 2008 U.S. Dist. LEXIS 38768, at *9-10 (S.D.N.Y. May 13, 2008)("Courts have generally permitted the addition or substitution of class representatives when there is no showing of prejudice to defendants and such addition or substitution would advance the purposes served by class certification.")

34. Finally, Jamison is not subject to the same attacks Defendant raises against Plaintiff's

typicality or adequacy because Jamison is not the account holder and FCS obtained his telephone number from a skip-tracing service, negating Defendant's allegations about typicality and consent[16] nor can Defendant claim any lack of credibility. The intervention of Jamison as class representative thus **ensure adequate class representation** and is highly desirable.

## IV. CONCLUSION

Plaintiff and proposed intervenors Jamison and Smith respectfully request leave to file a second amended complaint.

                                                      Respectfully submitted,
                                                      /s/ Keith J. Keogh

Keith J. Keogh
Craig Shapiro
Timothy Sostrin
KEOGH LAW, LTD.
101 N. Wacker, Dr., Ste. 605
Chicago, Il. 60606
312.726.1092/312.726.1093 (fax)
Keith@KeoghLaw.com

---

[16] Jamison is not even the debtor on the account Defendant was attempting to collect, but rather a debtor's family member whom Defendant skip-traced and called repeatedly even though he had never before communicated with the creditor or Defendant about the debt.

14